BERRY and another, Assignee, etc., *v.* SAWYER and others.

*(Circuit Court, W. D. Pennsylvania. September 14, 1882.)*

1. EXPRESS AND CONSTRUCTIVE TRUSTS—PAROL AGREEMENT RESPECTING LAND.
    A parol agreement by which one of several joint purchasers of land takes the title in trust for the others, imposes upon the grantee an express trust which does not fall within the meaning of a statute of limitations fixing a time for the enforcement of constructive trusts.

2. LIMITATION—BANKRUPT ACT—ADVERSE INTEREST.
    The clause of the bankrupt act requiring all causes of action, "between an assignee in bankruptcy and a person claiming an adverse interest," to be prosecuted within two years, applies only when the interest has been actually adverse for two years; and the interest of a trustee, so long as he acknowledges the trust, is not adverse to that of his *cestui que trust.*

3. WITNESS — COMPETENCY — ACTION BY OR AGAINST EXECUTORS — PARTY TO THE RECORD.

Section 858 of the Revised Statutes, making both parties in actions by or against executors, administrators, or guardians incompetent to testify as to certain transactions, does not disqualify a person interested in the controversy unless he is an actual party to the record.

4. EQUITY PLEADING — RESPONSIVE ALLEGATIONS — HOW FAR CONCLUSIVE EVIDENCE.

The rule that responsive allegations in the answer to a bill in equity are conclusive evidence in favor of the respondent unless overcome by the testimony of two witnesses or their equivalent cannot be invoked when the answer is upon information and belief, or is discredited by circumstances.

In Equity.

*Schoyer & McMurry*, for complainants.

*Malcolm Hay* and *S. H. Geyer*, for respondents.

McKENNAN, J.    This bill is filed by the complainants, as assignees in bankruptcy of N. P. Sawyer, against Jane Frances Sawyer, in her own right, and as executrix of the will of John H. Sawyer, and also against C. B. Seeley and Ormsby Phillips, as voluntary assignees of said John H. Sawyer.    It alleges that N. P. Sawyer confessed judgments to a large amount in favor of John H. Sawyer, which are entered of record in Allegheny county, a large portion of which judgments were merely a security for advances and responsibilities to be thereafter made and assumed by said John H. Sawyer for the benefit of N. P. Sawyer, but which he did not make or assume; and that certain valuable real estate, fully described in Exhibit C, was purchased jointly by John H. Sawyer, N. P. Sawyer, and B. C. Sawyer, the title of which, for convenience of sale, was vested in John H. Sawyer, who held said title in trust for himself and the said N. P. and B. C. Sawyer; and that the said John H. Sawyer, in his life-time, sold considerable portions of said real estate and received the purchase money, but rendered no account thereof.    And, therefore, praying that an account be taken of the proceeds of all sales by said John H. Sawyer in his life-time; that any surplus due to said N. P. Sawyer after paying his true indebtedness to John H. Sawyer, be paid to the complainants; and that the undivided one-third of the said real estate remaining unsold be conveyed to the complainants.

The answers of Jane F. Sawyer and Ormsby Phillips, upon information and belief, deny that the judgments confessed by N. P. Sawyer to John H. Sawyer were given, as stated in the bill, for future advances and responsibilities, but aver that they were founded upon an actual indebtedness by N. P. to John H. Sawyer, at the time. And they also, upon information and belief, deny the fiduciary character of the conveyances to John H. Sawyer of the real estate described.    And they also aver that an act of assembly of the commonwealth of Pennsylvania, approved April 22, 1856, entitled, "An act for the greater certainty of title, and more secure enjoyment of real estate," provides, *inter alia*, "that no right of entry shall accrue or action be maintained to enforce any implied or resulting trust as to re-

alty, but within five years after such trust accrued, with the right of entry, unless such trust shall have been acknowledged by writing to subsist by the party to be charged therewith within the said period;" and therefore aver that, as more than five years have elapsed since the alleged trust accrued, the complainants are not entitled to have it enforced.

It is clear that the Pennsylvania statute operates exclusively upon the class of trust which is within its terms. Resulting trusts alone are named, and hence they only are within its scope. They are such as are implied by operation of law, as where one buys land in the name of another, and pays the purchase money, the legal implication is that the grantee of the title holds it in trust for the person who paid the purchase money. They belong to a distinct class from express trusts, which never rest in implication, but are the product of an express declaration or agreement. That the latter may be created by parol—as is now well settled—does not change their technical character or classification. The trust alleged in the bill is an express one, and therefore the respondents are not entitled to the benefit of the statutory limitation.

The complainants were appointed assignees in bankruptcy of N. P. Sawyer on the twentieth of November, 1876; John H. Sawyer died in July, 1877; and this suit was brought in November, 1879. It is therefore insisted that more than two years elapsed after the complainants' right of action accrued, and that the suit is barred by section 5057 of the Revised Statutes, (section 2 of the bankrupt act.) That section fixes the period of two years from the time when the cause of action accrued for the bringing of suits, at law or in equity, "between an assignee in bankruptcy and a person claiming an adverse interest touching any property or right of property transferable or vested in such assignee." A similar provision was contained in the bankrupt act of 1841, and that was held not to apply to controversies touching real estate until after two years from the taking of adverse possession. *Banks* v. *Ogden*, 2 Wall. 58. And in *Bailey* v. *Glover*, 21 Wall. 346, the limitation in the act of 1867 is held to apply to all judicial contests where the interests are *adverse* and *have so existed for more than two years.* And so, again, in *Seymour* v. *Freer*, 8 Wall. 202, the court say: "When there is no disclaimer the statute has no application to an express trust, such as we have found to exist in this case." Here the court found a trust to have existed which is strikingly similar in its main feature to the trust set up in this case.

If the averments of the bill as to the original existence of a trust are sustained by competent and sufficient proof, the applicability of the limitation will then depend upon whether, and at what time, there was a disclaimer of the trust by the trustee or his representatives, or whether and when the interests of the parties became adverse. The respondents have not offered any evidence; and there is nothing in the record to show that John H. Sawyer, at any time during his

life, denied the trust, or that his assignees and personal representative assumed an attitude adverse to it until 1879, within a year before the institution of this suit. It is true that John H. Sawyer held the legal title and made sales and conveyances of parts of the trust property, and received the purchase money therefor. This was not, however, inconsistent with the trust, but was in entire harmony with, and in pursuance of, its alleged object and terms. More than this, it is in proof that N. P. Sawyer and B. C. Sawyer occupied parts of the trust property for some years during the life of John H. Sawyer without paying any rent to him, or any claim for it on his part. Under these circumstances, it is clear that an adverse relation touching the alleged trust did not exist for two years between N. P. Sawyer and John H. Sawyer or his representatives; and hence that the statutory limitation is ineffectually invoked.

The testimony of N. P. Sawyer has been taken and offered, and it is indispensible to the complainants. His competency as a witness is objected to by the respondents. Although he is not a party to this suit, yet we think he has such an interest in its result as would disqualify him, unless he is rendered competent by section 858 of the Revised Statutes. That section, in the most comprehensive terms, removes all disqualifications to testify by a party to an action, or by one interested in the issue tried; but it provides "that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, *neither party* shall be allowed to testify against the other, as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court." Before the passage of this act two classes of persons were incompetent to testify, viz., parties to the issue, and persons interested in but not parties to it. In the body of the section this disqualification is removed, without restriction, as to both classes. The proviso, however, restricts the testimony of a *"party"* to the issue so as to exclude transactions with, or statements by, a deceased testator, intestate, or guardian, but does not impose any such limitation upon the competency of a witness interested in but not a party to the issue. This is the literal import of the whole section, and, we think, accords with its spirit and reason. We must therefore overrule the objection to the deposition of N. P. Sawyer, and take the whole of it into consideration. That testimony is of great significance. It sustains every material allegation of the bill. It establishes the trust alleged, explains its origin and nature, and states fully and clearly its objects and terms, and the reason of them, and what was done in pursuance of it. And it is materially reinforced by the testimony of Wade Hampton and Andrew Lyons, both of whom testify to acts and declarations of John H. Sawyer, as well as of N. P. and B. C. Sawyer, in his presence, in confirmation of the existence of a trust. No reason is apparent to us why this testimony should not be believed; and

so accepting it, we are brought to the conclusion that the title to the real estate described in the bill and exhibits was vested in John H. Sawyer for the joint and equal benefit of himself, N. P. Sawyer, and B. C. Sawyer, and that the unsold remainder of this real estate is held by his successors, subject to this trust.

But it is urged by the respondents' counsel that even if the evidence in support of the bill is to be taken as true, it is not sufficient to entitle the complainants to a decree; and the familiar rule in equity is invoked that the responsive allegations in an answer are conclusive evidence in favor of the respondent, unless they are overcome by the testimony of two witnesses, or that of one and proof of circumstances equivalent to the testimony of a second witness. This is the general rule when the negative averments in the answer are positive and are founded upon the knowledge of the respondent. The reason of it is, as stated by Chief Justice MARSHALL in *Clark's Ex'rs* v. *Van Riemsdyk*, 9 Cranch, 160, that "the plaintiff calls upon the defendant to answer an allegation he makes, and thereby admits the answer to be evidence. If it is testimony, it is equal to the testimony of any other witness; and as the plaintiff cannot prevail if the balance of proof be not in his favor, he must have circumstances in addition to his single witness in order to turn the balance." And he affirms that the weight to be given to the answer is affected by the same tests which are applicable to a deposition, as, for instance, whether the respondent speaks from belief or knowledge. Both are only evidence, and must be weighed in the same scales. This qualification of the weight to be given to an answer upon information and belief is also strongly stated in the note to Mr. Bispham's Adam's Equity, on page 693, on the authority of numerous American cases. And in the note to section 849a, Story, Eq. Pl. (9th Ed.) it is thus stated: "An answer upon oath is not evidence for the defendant, which must be overcome by two witnesses, * * * (5) when the answer itself shows, or it is apparent from the defendant's situation or condition, that though the answer is positive, he swears to matters of which he could not have personal knowledge." In the same note it is further said, upon several authorities, that, where an answer upon oath is discredited as to one point, its effect as evidence, as to other points, is impaired or destroyed, according to the circumstances of the case.

The alleged trust property consisted of two parcels, one known as the Hitchcock property, purchased in the latter part of 1865; the other as the O'Hara property, which was purchased not long after the Hitchcock. As to the Hitchcock property, the largest requirement of the rule is fully met by the proofs presented by the complainants. The testimony of three witnesses as to the declarations and acts of John H. Sawyer touching the negotiation for its purchase, the contract for it, and the sales of a large part of it, clearly impress upon his title the fiduciary character contended for by the complainants. The proof in relation to the O'Hara property

is somewhat less plenary. It consists chiefly of the testimony of N. P. Sawyer. But considering that his testimony as to the trust agreement is corroborated by the testimony of Wade Hampton and Andrew Lyons touching the Hitchcock property; that the negative averments of the answers do not rest upon the personal knowledge of the respondents; that the answers are materially discredited upon one point at least by the complainants' proofs; and that N. P. Sawyer was in the occupancy and enjoyment of the O'Hara property for nearly 10 years without payment of or claim for rent,—we are of opinion that the weight of the answers as evidence is greatly impaired, and that the balance of proof is in favor of the complainants.

Upon the whole case, we think the relief prayed for ought to be granted against the respondents, except Seeley, and a decree to that effect will accordingly be drawn.

ACHESON, J. I sat with Judge McKENNAN at the hearing of this case, and have reached the same conclusions announced by him. I concur unreservedly in his opinion.