[Civil No. 1528. Filed June 23, 1917.]

[166 Pac. 290.]

H. S. CORBETT, Trustee, Appellant, v. SAMUEL L. KINGAN, Trustee, Appellee; FARRAND O. BENEDICT, Defendant.

1. WITNESSES—DISQUALIFICATION—INTEREST.—An executor and trustee authorized to hold property for the beneficiaries is, after termination of the executorship, a devisee within Civil Code of 1913, paragraph 1678, providing that in an action by or against an executor, administrator, or guardian, when judgment may be had against them as such, neither party shall be permitted to testify to any transaction or statement of the decedent, unless called by the opposite party or required to testify by the court, which provision, with its restrictions and limitations as to qualifications of witnesses, is extended to all actions by or against the heirs, devisees, and legatees or legal representatives of the decedent, when such action arises out of any transaction with the decedent, and when judgment may be had against them as such.

2. WITNESSES—DISQUALIFICATION—INTEREST.—Under such statute persons prohibited from testifying as to transactions and statements of a deceased person when a judgment may be either for or against the legal representative, heir, devisee, or legatee of the decedent are confined to formal technical parties to the suit, and the interest of the witness, however immediate or extensive, is not the disqualifying factor.

3. WITNESSES—DISQUALIFICATION—INTEREST.—Under such statute, where a testamentary *cestui* set up a contract with testator to bequeath him the property in consideration of care and support, and he and his wife assigned their interest to plaintiff as trustee, who sued the trustee under the will, the *cestui's* wife was neither a formal nor necessary party, and was not disqualified to testify as to the making of the contract.

[As to rule that witness is incompetent to testify to transaction with decedent as applicable to transaction between decedent and third person in presence of witness, see note in **Ann. Cas.** 1913E, 795.]

4. WITNESSES—DISQUALIFICATION—INTEREST.—In such case, the suit being by the assignee and trustee against the *cestui* and the testamentary trustee, the assignee could call the *cestui* as an opposite party to testify to the making of the contract.

5. SPECIFIC PERFORMANCE — EVIDENCE — EXISTENCE OF CONTRACT. — In suit for specific performance of contract to devise land in considera-

tion of support, it was not error to strike testimony showing performance on plaintiff's part in the absence of evidence of the execution of the contract.

6. TRIAL—VERDICT—EQUITY CASE.—Under Civil Code of 1913, paragraph 542, providing that the court shall submit to the jury all controverted questions of fact in all actions where equitable relief is sought, the court need not submit immaterial questions of fact, and it is not necessarily error to return a general verdict.

7. TRIAL—DISCRETION OF COURT—ORDER OF PROOF.—In suit for specific performance of a contract, the order of proof of execution of the contract and the acts of performance is largely within the discretion of the trial court.

APPEAL from a judgment of the Superior Court of the county of Pima. G. W. Shute, Judge. Reversed.

Mr. Ben C. Hill, for Appellant.

Mr. John H. Campbell and Mr. S. L. Kingan, in Proper Person, for Appellee.

ROSS, J.—This is the second time the case has been before this court. The issues involved, as made by the pleadings, are set out in 16 Ariz. 440, 146 Pac. 922.

The case was tried with a jury, and a great deal of evidence introduced. At the close of the appellant's case, on the motion of appellee, Kingan, all the testimony given on behalf of appellant was stricken, upon the ground that the evidence introduced was immaterial. Thereupon the jury was instructed by the court to return a verdict in favor of the appellee. Upon this verdict judgment was entered in favor of appellee Kingan and against the appellant. This appeal is prosecuted from the judgment and from the order overruling motion for a new trial.

The action is for the specific performance of a contract alleged to have been made by Julia A. Knapp with Farrand O. Benedict, her nephew, in which said contract it is claimed that Julia A. Knapp agreed to give to Benedict all of her property, both real and personal, of which she should be possessed at the time of her death, in consideration that the said Benedict would live with her until that event should happen, and do and perform certain things in the way of caring for her and looking after and improving her property. This contract is alleged to have been made in 1892, and, in so far

as Benedict's duties and services were concerned, remained the contract thereafter. But on July 14, 1900, it is claimed the contract was modified so as to make Kate Benedict Thompson and William B. Benedict, sister and brother of Farrand O. Benedict, beneficiaries in the sum of $1,500 each; that in pursuance and in accordance with the terms of said modified contract Julia A. Knapp, on said last date made and executed her will. On June 6, 1908, Julia A. Knapp made and executed another will, in which she expressly revoked all wills theretofore made. In this last-mentioned will she devised all of her property, both real and personal, to the appellee, Kingan, in trust, with directions that the rents, issues, and profits thereof be paid to Farrand O. Benedict during his life, with the remainder over to Kate Benedict Thompson and William B. Benedict. To this last will on March 7, 1910, was added a codicil, in which the remainder was diverted from Kate Benedict Thompson and William B. Benedict to the children of Farrand O. Benedict in case he should remarry and leave children of his body surviving him. Julia A. Knapp died on the twenty-sixth day of September, 1912.

The contract between Farrand O. Benedict and Miss Knapp, and which is the basis of this suit, was on the second day of February, 1914, by the said Benedict assigned, conveyed, and transferred to appellant, Corbett, as trustee for Frances L. Benedict, William B. Benedict, and Kate Benedict Thompson, with the agreement and understanding that said Corbett would take whatever legal steps he found necessary to recover the estate from appellee, Kingan. In said contract of assignment it was provided that Frances L. Benedict, who is the wife of Farrand O. Benedict, should receive and be entitled to Farrand O. Benedict's share after the payment of all expenses and charges.

At the trial the appellant undertook to prove the contract as alleged. To that end he offered as witnesses to the contract the living party thereto, Farrand O. Benedict, and his wife, Frances L. The appellee objected to their being permitted to testify on the grounds that they were disqualified under the law. The ruling of the court in refusing to permit these two witnesses to testify or to require them to testify as to the terms and conditions of said contract is assigned as error.

Section 1678 of the Civil Code of 1913 provides that in an action by or against an executor, administrator, or guardian, when judgment may be had against them as such, neither party shall be permitted to testify to any transaction or statement of the decedent, unless called by the opposite party or required to testify by the court, and this provision, with its restrictions and limitations as to qualifications of witnesses, is extended to all actions by or against the heirs, devisees, and legatees or legal representatives of the decedent, when such action arises out of any transaction with the decedent and when judgment may be had against them as such. This disqualification of parties as witnesses is an exception to the general rule of qualification; the general rule being that every person, including the party, may testify in any action or proceeding and that no person is incompetent to testify because he is a party to the suit or proceeding or interested in the issue. Sections 1674, 1675, Civil Code 1913. It will be noted that the disqualification is not absolute; for it may be removed by the opposite party calling his adversary as a witness, or by the court if, in its discretion, it chooses to require him to testify.

The suit is prosecuted against appellee, Kingan, as trustee. He deraigns his title to the property through the will of Julia A. Knapp, who devised it to him in trust for the use and benefit of Farrand O. Benedict during his life with the remainder over. The will under which he claimed was duly probated, the estate administered upon and distributed to him as trustee, and his duties as executor terminated. The suit is not against appellee, therefore, in his representative capacity as executor. Is he, as a party to the suit, within any of the terms "heirs," "devisees," "legatees," or "legal representative" of the decedent? While he is not the devisee of the beneficial estate, he is in fact and in law the devisee of the legal estate, and therefore falls literally within the class of parties designated in the statute restricting the opposite party from testifying unless called by his opponent or required to testify by the court. The judgment in this case must be either for or against him as the devisee of the legal estate of Julia A. Knapp, the decedent.

It is claimed by the appellant that Frances L. Benedict, for whose benefit the suit is prosecuted, is not a party thereto, and that the disqualification extends only to the "parties"

to the suit. The general rule being that all persons are qualified to testify, whether they be parties to the suit or interested in the issues, he insists that the exception to the general rule should be strictly construed, and that only those persons clearly and exactly within the exception should be precluded from testifying to any transaction or statement with the decedent.

The rule of qualifications and its exceptions, as contained in sections 1674, 1676, and 1678 of the Civil Code, *supra,* is the same as the federal rule found in section 858 of the United States Revised Statutes (U. S. Comp. Stats. 1916, § 1464), and was probably adopted from the latter statute. In *Potter* v. *National Bank,* 102 U. S. 163, 26 L. Ed. 111, the court, after reciting the facts which showed that the witness was interested in the issues, gave the history of the legislation in connection with section 858 and announced the rule that the disqualification extended only to the "parties" of record in the following language:

"The existing statute (Rev. Stats., § 858) seems too plain to require construction. The first clause of that section shows that there was in the mind of Congress two classes of witnesses, those who were parties to the issue, that is, parties to the record, and those interested in the issue to be tried, that is, those who, although not parties to the record, held such relations to the issue that they would lose or gain by the direct legal operation and effect of the judgment. A witness may be interested in the issue without being a party thereto, a distinction which seems to have been recognized in all the statutes to which reference has been made. But, whether a party to or only interested in the issue, the witness is not to be excluded in the courts of the United States upon either ground, except that in actions in which judgment may be rendered for or against an executor, administrator, or guardian no party to the action can testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. The proviso of section 858 excludes only one of the classes described in its first clause, those who are, technically, parties to the issue to be tried, and we are not at liberty to suppose that Congress intended the word 'party,' as used in that proviso, to include both those who, according to the established rules

of pleading and evidence, are parties to the issue, and those who, not being parties, have an interest in the result of that issue."

The Potter-National Bank case was approved and followed in *Snyder* v. *Fiedler*, 139 U. S. 478, 35 L. Ed. 218, 11 Sup. Ct. Rep. 583.

In *Berry* v. *Sawyer* (C. C.), 19 Fed. 286–289, the court said, in referring to section 858:

"That section, in the most comprehensive terms, removes all disqualifications to testify by a party to an action, or by one interested in the issue tried; but it provides 'that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court.' Before the passage of this act two classes of persons were incompetent to testify, viz., parties to the issue and persons interested in, but not parties to, it. In the body of the section this disqualification is removed, without restriction, as to both classes. The proviso, however, restricts the testimony of a 'party' to the issue so as to exclude transactions with, or statements by, a deceased testator, intestate, or guardian, but does not impose any such limitation upon the competency of a witness interested in, but not a party to, the issue. This is the literal import of the whole section, and, we think, accords with its spirit and reason."

In *Huntington National Bank* v. *Huntington Distilling Co.* (C. C.), 152 Fed. 240–243, it is said:

"This statute has been held to be a remedial one, intended to remove technical disqualifications in the common-law rules of evidence and to promote the fair administration of justice, and to be liberally construed."

See, also, *Stephens* v. *Bernays* (D. C.), 42 Fed. 488.

Under these decisions interest in the issues of the suit does not disqualify as under the common-law rule. The person offered as a witness must be a party to a suit in which the judgment may be either for or against the heir, devisee, legatee, or legal representative of the decedent as such. The disqualification extends only to "those who are technical parties to the issues to be tried."

The Arkansas statute removing the common-law disability of witnesses, is almost identical with section 858 of the United States statute, as also our section 1678. In *Stanley* v. *Wilkerson,* 63 Ark. 556, 39 S. W. 1043, the facts were as follows: A partnership had brought suit against the administrator and obtained judgment. An appeal was prosecuted from the judgment, and pending the appeal the plaintiff partnership made an assignment for the benefit of their creditors to Stanley, who was then appointed receiver by the court to take charge of the effects of the partnership. The receiver was substituted as the plaintiff in the appellate court, which was also the trial court. One of the partners was called and examined as a witness as to the transaction with the decedent, whose administrator was the defendant. The court said:

"In the case at bar, J. H. Campbell, as one of the firm of W. P. Campbell & Bro., was, of course, interested in the issue to be tried, at first interested without contingency, and, after the suit was ordered to progress in the name of the receiver, who was also assignee, he was interested on contingency merely; but this court said in the case of *McRae* v. *Holcomb, supra,* that: 'But mere interest in the issue to be tried does not disqualify.' Had Campbell been called to testify before Stanley was made a party, and the suit ordered to progress in his name, there is no doubt that he would have been incompetent; for up to that stage of the proceeding he was not only directly interested in the result of the trial of the issue, but was a party to the suit, and of course the suit was then, as it was finally, a suit in which judgment might be rendered for or against the administratrix, she being the defendant therein. . . . It is not the interest in the issue to be tried that renders incompetent, but the being a party of record to that issue, which the proposed witness had ceased to be at the time he was called to testify."

In *Mendenhall* v. *School District,* 76 Kan. 173, 90 Pac. 773, in discussing a statute very much like ours, the court said:

"Statutes which exclude persons from testifying will be strictly construed in favor of the witness. Classes of persons not named in the statute will not be excluded by implication, . . . even though the reasons therefor may seem as strong as those which apply to the persons expressly designated. 30 Am. & Eng. Ency. of Law (2d ed.) 983; *Wootters* v. *Hale,* 83 Tex. 564, 19 S. W. 156 [134]. Our law excludes

the 'party' only. In many states having a similar statute this word has been defined to mean a party to the suit in its strict legal sense. In the case of *Potter* v. *Third National Bank*, 102 U. S. 163, 26 L. Ed. 111, Justice Harlan, in construing a statute substantially the same as this, said: 'The proviso of section 858, Rev. St. U. S. (U. S. Comp. St. 1901, p. 659), excludes only one of the classes described in its first clause, those who are, technically, parties to the issue to be tried, and we are not at liberty to suppose that Congress intended the word "party," as used in that proviso, to include both those who, according to the established rules of pleading and evidence, are parties to the issue, and those who, not being parties, have an interest in the result of that issue.' In the case of *Merchants' Bank* v. *Cook*, 4 Pick. (Mass.) 411, it is said: 'The word "party" then is unquestionably a technical word, and has a precise meaning in legal parlance. By it is understood he or they by or against whom a suit is brought, whether at law or in equity; the party plaintiff · or defendant, whether composed of one or more individuals, and whether natural or legal persons.' "

In a later case the same court used the following language:

"The fact that a person other than the parties may have an interest in the result of the action does not disqualify him as a witness. The Code specifically provides that no one shall be disqualified by reason of his interest in the result of the litigation. Code Civ. Proc. par. 317 (Gen. St. 1909, par. 5911). The prohibition in Code Civ. Proc. par. 320, is not to be extended by implication, and it has been held to apply only to those who are technically parties to the action. The term 'party,' as used in the Code, does not mean or include persons not parties in the technical sense, however much they may be interested in the result of the suit." *Hess* v. *Hartwig*, 83 Kan. 592, 112 Pac. 99.

In *Cullen* v. *Woolverton*, 65 N. J. L. 279, 47 Atl. 626, suit was prosecuted by the assignee of a chose in action on contract, and was for services performed by the assignor in nursing the deceased and for work and labor done. The assignor was called as a witness to testify to the contract and the services rendered. Under a statute in all material ways similar to ours, it was held that the assignor was a competent witness. The court quoted with approval the language of

Chief Justice BEASLEY in *Palmateer* v. *Tilton,* 40 N. J. Eq. 555, 5 Atl. 105, as follows:

" 'But the language of the act is clear and definite, and the result, if we adhere to such language, is entirely reasonable; and, this being the case, the judicial duty is one of interpretation simply. The statute itself enumerates the cases in which the testimony is to be rejected, and no case can be added to that enumeration. If we attempt to leave the plain terms of the act, we enter into an undefined field of inference and conjecture. The regulation applies to the practice in the trial of causes, and it is important, therefore, that its limitations should be clear.' And he says to reject the testimony in that case will obviously do violence to the words of the act, in order to enact a rule which will conform to judicial notions, and this would be judicial legislation, pure and simple. He cites in that opinion *Jones* v. *Smart,* 1 Term Rep. 44, in which Mr. Justice Buller said: 'We are bound to take the act of parliament as they have made it. A *causus omissus* can in no case be supplied by a court of law, for that would be to make laws.' "

See, also, *Harrison* v. *Patterson* (N. J. Ch.), 50 Atl. 113.

In speaking of the purpose and object of statutes enabling parties to actions and parties interested in the issues to testify and the exception thereto, the court, in *St. John* v. *Lofland,* 5 N. D. 140, 64 N. W. 930, said:

"This whole argument that the letter of this law should be expanded to the dimensions of the spirit of the statute rests on a false assumption as to the spirit of this legislation. The general policy of the section is to make all persons competent witnesses. So far as the question of the extent of the limitations of that policy is concerned, the only way we can ascertain the scope of this limitation is by looking to the language in which that limitation is expressed. We cannot look beyond the language. We cannot say that it was the purpose of the legislature to exclude all evidence merely because the witness from whose lips it might fall would enjoy the advantage of testifying to a transaction with a deceased person, who on that account could not confront and contradict him. Statutes which exclude testimony on this ground are of doubtful expediency. There are more honest claims defeated by them by destroying the evidence to prove such claim than there would be fictitious claims established if all

such enactments were swept away, and all persons rendered competent witnesses. To assume that in that event many false claims would be established by perjury is to place an extremely low estimate on human nature, and a very high estimate on human ingenuity and adroitness. He who possesses no evidence to prove his case save that which such a statute declares incompetent is remediless. But those against whom a dishonest demand is made are not left utterly unprotected because death has sealed the lips of the only person who can contradict the survivor, who supports his claim with his oath. In the legal armory there is a weapon whose repeated thrusts he will find it difficult, and in many cases impossible, to parry if his testimony is a tissue of falsehoods—the sword of cross-examination. For these reasons, which lie on the very surface of this question of policy, we regard it as a sound rule to be applied in the construction of statutes of the character of the one whose interpretation is here involved, that they should not be extended beyond their letter when the effect of such extension will be to add to the list of those whom the act renders incompetent as witnesses.''

In *Witte* v. *Koeppen,* 11 S. D. 598, 74 Am. St. Rep. 826, 79 N. W. 831, the action was prosecuted by the assignee against the administrator for money advanced by the assignor to the deceased to be invested in the name of the assignor. The assignor was the father of the deceased. It was insisted that the assignor was the real owner of the demand or claim, and that the suit was being prosecuted by the assignee for his benefit, and that therefore the assignor was incompetent to testify. After quoting the qualifications statute and the exception, the court said:

''It will be observed that by the first clause of the section no person offered as a witness shall be excluded, except as therein provided, and that by the exception it is only the parties who are excluded from testifying in the action; that is, 'neither party shall be allowed to testify against the other.' While it is conceded by appellant that the witness was not technically a party, he insists that he is beneficially interested, and comes within the spirit of the statute excluding a party from being a witness. This court held in *Bunker* v. *Taylor,* 10 S. D. 526, 74 N. W. 450, following the decision of the Supreme Court of the United States in *Potter* v. *Third Nat. Bank,* 102 U. S. 163 [26 L. Ed. 111], that the witnesses

excluded by the proviso are those only who are technically parties to the issues to be tried, and do not include those who are not parties, though they have an interest in the result of the issue. It seems to be well settled that, when the enacting clause is general in its language and objects, and a proviso is afterwards introduced, such proviso should be construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms; and those who set up such exception must establish it as being within the words, as well as within the reason, thereof. . . . This court is not at liberty to disregard the plain and express terms of the statute upon any theory as to its spirit, or what it ought or what the legislature might have intended it to be, when the statute is plain and unambiguous, as courts are not permitted to search for its meaning beyond the statute itself. Cooley, Const. Lim. 5457. The able argument of counsel for the appellant, in which they contend that, as Christian F. Koeppen was interested in the result of this suit, as they claim, he should have been excluded as a witness, would be more properly addressed to the legislature than to this court.''

Texas, with a statute almost identical with ours, is the only state whose courts have expanded the exception to the general rule of competency so as to qualify persons not falling directly within the terms of the exception, and is the only state that we have been able to find that has liberally construed the exception by including those whom it chooses to call within the spirit of the law, if not within the terms. In *Simpson* v. *Brotherton,* 62 Tex. 170, it is held (quoting from the syllabus) :

''The wife, even when not made a party to proceedings between her husband and the representatives of a deceased party, is not a competent witness to testify to transactions between her husband and the deceased concerning matters in which she has a community interest with her husband. Being as fully interested as her husband in the result of such a suit, the object of the statute would be defeated by admitting her testimony.''

Beginning with this departure from the terms of the statute, that court has frequently approved the *Simpson* v. *Brotherton* case. *Wells* v. *Hobbs,* 57 Tex. Civ. App. 375, 122 S. W. 451; *Whitfield* v. *Diffie* (Tex. Civ. App.), 105 S. W. 324; *Newton* v. *Newton,* 77 Tex. 508, 14 S. W. 157. And in *Gen-*

*eral Bonding & Casualty Ins. Co.* v. *McCurdy* (Tex. Civ.
App.), 183 S. W. 796, it has expanded it so as to include the
assignor.   In the last case it was said:

"It may well be doubted whether the statute is a good
one, but, as long as it remains the law, the courts, while not
extending it, will give it a practical construction such as will
effect the purpose thereof."

And it quotes from the Simpson-Brotherton case as fol-
lows: "So the object of the act, excluding parties from tes-
tifying as to transactions with deceased persons, would be
defeated by allowing one to testify to such transactions who
was as fully interested in the result of the suit as any of the
persons named as parties upon the record"—thus, contrary
to the terms, and, we believe, the spirit, of the statute, mak-
ing interest the criterion of disqualification, whereas the stat-
ute limits the disqualification to the "parties" to the suit or
action.

The predecessor of this court in *Miller* v. *Miller,* 7 Ariz.
316, 64 Pac. 415, sustained the right of the husband to tes-
tify as to conversations of the deceased in an action brought
by his wife against the administratrix of the estate of the de-
ceased to correct a deed.   In the opinion of the court it is
said:

"Such statute does not in its terms prohibit the husband or
wife of the party to the action from testifying as to any con-
versation which he or she may have had with the deceased
during his lifetime.   Our attention has not been called to,
any principle which would prevent the husband or wife from
so testifying, neither have we been referred to any text-writer
or decision of any court upon the subject.   The statutes of
Arizona permit parties to be witnesses under all conditions
and circumstances, with but few exceptions."

While in the Miller case it is not apparent that the subject
matter of the action was community property, it does seem
that, if it had appeared to be such, the ruling of the court
would not have been different, the court holding that before
the witness was incompetent to testify he must fall within the
"terms" of the statute prescribing what would disqualify a
witness.   This construction of our statute is more consonant
with the spirit and letter of the statute than the construction
given it by the Texas courts, and it is certainly in accord with
the general trend of decisions construing like statutes.

One of our most profound and philosophical authors on evidence has said of the rule disqualifying the living witness to any transaction or statement of the decedent:

"Are not the estates of the living endangered daily by the present rule, which bars from proof so many honest claims? Can it be more important to save dead men's estates from false claims than to save living men's estates from loss by lack of proof? The truth is that the present rule is open, in almost equal degree, to every one of the objections which were successfully urged nearly a century ago against the interest rule in general. Those objections may be reduced to four heads: (1) That the supposed danger of interested persons testifying falsely exists to a limited extent only; (2) that, even so, yet, so far as they testify truly, the exclusion is an intolerable injustice; (3) that no exclusion can be so defined as to be rational, consistent, and workable; (4) that in any case the test of cross-examination and the other safeguards for truth are a sufficient guaranty against frequent false decision. . . . As a matter of policy, this survival of a part of the now discarded interest qualification is deplorable in every respect; for it is based on a fallacious and exploded principle, it leads to as much or more false decision than it prevents, and it incumbers the profession with a profuse mass of barren quibbles over the interpretation of mere words." Wigmore on Evidence, § 578.

We have come to the conclusion that the persons prohibited from testifying under our statute as to transactions and statements of a deceased person when a judgment may be either for or against the legal representative, heir, devisee, or legatee of the decedent are confined to formal technical parties to the suit, and that the interest of the witness, however immediate or extensive, is not the disqualifying factor.

The question then is whether Frances L. Benedict, as a beneficiary in the chose of action upon which this suit is based, is a party plaintiff or not. If she is a party plaintiff, she is disqualified; if not a party plaintiff, she is a competent witness, and may testify to the transactions and statements of the decedent, Miss Knapp.

Bouvier, in his definition of parties to suits in equity, says:

"The person who seeks a remedy in chancery by suit, commonly called the plaintiff, or complainant, and the person

against whom the remedy is sought, usually denominated the defendant, or respondent, are the parties to a suit in equity.''

Our statute (section 401, Civil Code 1913) provides that:

''The assignee of any chose in action, is a trustee of an express trust, within the meaning of the preceding section.''

The preceding section (400) provides that a trustee of an express trust may sue without joining with him the person for whose benefit the action is brought. In these two sections express authority is contained for a trustee to sue on a chose in action in his own name without joining the beneficiaries named in the written assignment of the chose.

Under the terms of the assignment to Corbett the remedial right, as distinguished from the beneficial right, is vested in Corbett. It is made his duty to prosecute a suit to recover the property involved in the alleged contract. The beneficiaries named in the assignment are not necessary parties to the suit any more so than if they had not been named as beneficiaries therein. The disclosure in the complaint and the assignment of the beneficiaries is no part of the right of action. It was not necessary to constitute Corbett the trustee of an express trust that the assignment should have disclosed the beneficiaries. Whether disclosed or not in the assignment of the chose in action, the beneficiaries are as much parties to the suit in one case as in the other, but in neither case are they formal or technical parties. In both cases, however, they would be bound by the judgment, because they are vitally interested and privies to the suit and judgment.

In *Gould* v. *Soto,* 14 Ariz. 558, 133 Pac. 410, it was said:

''The claim that Silas Gould, Jr. [who was the beneficiary of an express trust], was not a party to such action is wholly without foundation. True, he was not named as a party in the title of the action, but the only rights submitted were his rights, and, if the judgment rendered in that action would be binding at all, it would bind him and adjudicate his rights. The beneficiary in such action is in effect and to all intents and purposes the real party in interest. 23 Cyc. 1245.''

The citation from Cyc. makes it very clear that the court in the above case only intended to hold that the beneficiary was so represented in the suit as to be concluded by any judgment entered therein. The citation reads:

"Although one is not nominally or formally a party to an action, he will be concluded by the judgment therein if he was represented, as to his rights or interests in the subject matter, by a party legally entitled to represent him, or who actually conducted the prosecution or defense on the behalf and for the benefit of such person."

We conclude that Frances L. Benedict is not a "party" within the meaning of section 1678 of our Civil Code of 1913, and that she is not an incompetent witness to any transaction or statement made by decedent, Miss Knapp, and that the court erred in rejecting her testimony.

Farrand O. Benedict was also offered as a witness by the appellant to prove the terms and conditions of the contract and the statements made by the decedent concerning the same, to which the appellee objected on the ground that he was incompetent to testify to those things, because of the prohibitions contained in section 1678 of the statute. The objection was sustained by the court, which is assigned as error. Benedict was a beneficiary under the will, and was a necessary party defendant with appellee, Kingan, the trustee. He had parted with all his claimed interest in the Knapp estate by virtue of the contract sued on. If the plaintiff-appellant is successful in maintaining the contract, Benedict will be the loser of a valuable legacy under the will. He is technically and formally, as well, a necessary party defendant in the suit. It is contended that he is not an "opposite party" to the appellant, because his conduct throughout evinced a desire on his part that the will be defeated, and the contract sustained. Even granting this to be true, still, in law, his rights under the will were adverse to the contract and to the claim of appellant. If the latter establishes the contract Benedict loses all; for by the assignment he disposed of that source of his interest. He cannot legally claim or demand any of the fruits of a successful suit on the contract. The purpose of the appellant's suit was to take from him his patrimony under the will. The appellant therefore was an "opposite party" in interest as well as in name. The statute gives to the "opposite party" the right to call his adversary to testify, and we conclude that the court erred in refusing to allow Benedict's testimony.

Complaint is made of the action of the court in striking out all of the evidence introduced by the appellant upon the

ground that it was immaterial, and also of the action of the court in instructing the jury to return a verdict for appellee, Kingan. The evidence introduced upon the part of appellant was mostly for the purpose of showing performance on his part of the contract as originally made and modified by Farrand O. Benedict. There was also some evidence of admissions and statements made by the deceased, Miss Knapp, as to her intention to leave all her property to the said Benedict. All of this evidence might or might not be referable to a contract which she had entered into with Benedict prior thereto. In the absence of any direct evidence of a specific contract between Benedict and the deceased to the effect that she would give all her property to him upon her death, it is very doubtful if there was in the evidence submitted anything to tie it or identify it with a contract; all that was done by Benedict for the deceased in her lifetime and all of her statements as to her purpose and intention of leaving her property to him might just as well have been referable to her natural love and affection for him. There being no evidence before the court, at the time that the motion to strike was entered, of the contract as alleged, other than casual statements made by the deceased to strangers, we are not able to say that the court acted wrong in striking the evidence. The acts of performance, in the absence of some evidence of the contract other than casual admissions or statements of the deceased, were incompetent.

It is the contention of the appellant that in no equity case can the jury return a general verdict, and he bases his contention upon section 542 of the Civil Code. This section provides that the court shall submit to the jury all controverted questions of fact in all actions where equitable relief is sought, and that the verdict of the jury shall be binding upon the court in the determination of the action, unless set aside and a new trial granted. As we understand it, the controverted questions of fact to be determined by the jury, under this statute, are material facts bearing in some way upon the issues. If the dispute or controversy be about facts that are incompetent or immaterial, we do not conceive it to be the duty of the court to submit them to the jury. As above indicated, the evidence introduced was upon the controverted fact of performance of a contract, and before this could become material and competent some evidence of the contract itself

must have been introduced. It would not be for the court to determine the weight of the evidence of the contract, or as to .whether it was established by a preponderance of the evidence, for these are questions for the jury, but if there was no substantial evidence of the contract, as alleged, we do not think that the provisions of section 542, *supra,* were intended to prohibit the court from so declaring and instructing the jury accordingly.

We think the order of proof of the contract and the acts of performance is largely within the discretion of the trial court. We know of no hard-and-fast rule requiring that the contract should first be established before acts of performance may be proved. That would be the orderly course. But in the end, if the contract is not proved, and that is a question for the jury, the acts of performance are immaterial and incompetent.

There are a great many other assignments of error, based largely upon the rejection of evidence offered by the appellant. To take each one of them up and discuss them would extend this opinion further than we feel it necessary. What we have said should be sufficient guide to the court in a retrial of the case.

For the error in refusing to permit Frances L. Benedict and Farrand O. Benedict to testify to the transactions and statements with the deceased, as offered, the case will have to be reversed and a new trial granted.

It is so ordered.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.