417 P.2d 728

**In the Matter of the ESTATE of Netta L. MacDONALD, Deceased.**

**Frank M. PETERSON, Appellant,**

**v.**

**FIRST NATIONAL BANK OF ARIZONA, Appellee.**

**No. 1 CA–CIV 208.**

Court of Appeals of Arizona.

Aug. 30, 1966.

Rehearing Denied Oct. 3, 1966.

Lewis, Roca, Scoville, Beauchamp & Linton, by Charles Crehore, James Moeller and Terry Dean Oehler, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Elias M. Romley and Neal Kurn, Phoenix, for appellee.

CAMERON, Acting Chief Judge.

This is an appeal from an order approving the supplemental accounting of an executor and denying the objections of the appellant made to the said supplemental accounting.

We are called upon to answer two questions: (1) Did the trial court err in admitting evidence of an alleged oral modification of the lease executed by the decedent, and (2) must a person, to be entitled to a set-off against amounts due an estate, file a claim with the executor within four months after notice to creditors as provided by statute (§§ 14–561, 14–570 A.R.S.).

The facts necessary for a determination of this matter are as follows: Mark W. Bobo was the husband of the niece of Netta L. MacDonald. On or about 27 June, 1955, Mark W. Bobo and Netta L. MacDonald entered into a lease of certain real property located in Maricopa County, State of

Arizona. The lease was on a printed form and provided for $6,800.00 a year rent, payable in two semi-annual payments of $3,400.00 on or before the 1st day of July and the 1st day of January of each year. The lease provided in a typewritten insertion that:

"The first party (Netta L. MacDonald) agrees that she will pay when due all assessments levied by the Salt River Water Users' Association and the second party (M. W. Bobo) will pay for all excess water used by him."

The lease also provided that Bobo would have the option to renew the lease upon the same terms and conditions. The lease was for 5 years, and by letter dated 1 July, 1960, Mark W. Bobo advised Netta L. MacDonald that he wished to renew the lease and said letter was signed as approved by Netta L. MacDonald.

Netta L. MacDonald died on or about 7 October, 1961. The First National Bank of Arizona petitioned to probate the will on 24 October, 1961. Letters testamentary were issued and notice to creditors was given on 16 November, 1961, as provided by statute (§ 14–561 A.R.S.).

The first account and report of the executor was filed 25 July, 1963, and the appellant objected to the allowance of the sum of $10,002.81 as a set-off against the lease between the deceased and M. W. Bobo. It is agreed that M. W. Bobo did not file a creditor's claim with the executor within four months from the date of first notice to creditors as provided in 14–561 A.R.S.

Hearing was held before the court below concerning the nature and the amount of the set-off allowed against the decedent's lease. It is the contention of the executor that Bobo made advances under the lease agreement in the said sum of $10,002.81, and that such advances constituted a prepayment of rent. The executor applied the payment in full satisfaction for the rent which became due to the estate on 1 January and 1 July, 1962, to a payment of part of the rent which became due 1 January, 1963.

It was the testimony of Bobo and his wife that after this lease had been entered into, that certain oral modifications of said lease were agreed to between the deceased and Bobo, and that Bobo would receive credit at the end of the lease period by the amount of certain improvements and expenditures made by Bobo as follows:

| | |
|---|---|
| Check Ports | $ 162.00 |
| 2 Acre Feet Pump Water Rights | 4340.00 |
| Pump and Installation | 2625.23 |
| Ditch under Buckeye Road | 2815.48 |
| Sewer Work on Lessee's Home | 60.00 |
| | $10,002.81 |

Appellant objected during the hearing in the trial court to the admission of testimony and evidence concerning any oral agreement altering, amending or changing the provisions of the written lease.

## THE "PAROL EVIDENCE RULE"

■ Appellant's first objection is that the court erred in admitting evidence concerning the oral modification of the lease agreement between decedent and Bobo because this evidence violated the "parol evidence rule". The appellant contends that the "parol evidence rule" bars not only prior and contemporaneous oral agreements, but also any subsequent oral agreement which seeks to modify the terms of a written agreement. In support of this position, appellant cites an Arizona Supreme Court case which states:

"In view of this court's prior decisions applying the parol evidence rule, it is apparent that the trial court erred in admitting in evidence the conversations complained of, antecedent and *subsequent* to the execution of the lease between the parties." Lambros Metals v. Tannous, 71 Ariz. 53, 57, 223 P.2d 570, 572 (1950). (Emphasis ours.)

Our Supreme Court later stated:

"The parol evidence rule, briefly stated, is a prohibition against the admission of extrinsic evidence which would vary the terms of a properly executed instrument.

(citations) We have held that this is a doctrine of substantive law, not merely an exclusionary rule of evidence." Mc-Neil v. Attaway, 87 Ariz. 103, 109, 348 P.2d 301, 305 (1959).

And recently:

"Where two parties have made a written agreement to which they have both assented as a complete and accurate integration of that contract, evidence of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. (citations omitted) This is what has been called 'parol evidence rule' * * *." Rental Development Corp. of America v. Rubenstein Construction Co., 96 Ariz. 133, 136, 393 P.2d 144, 146 (1964).

A careful reading of Lambros Metals v. Tannous, supra, would indicate that what the court was prohibiting in that case was the admission of parol evidence or oral testimony to vary the terms of an agreement made between the parties. This does not prevent the parties from making a subsequent agreement to alter, vary or amend the prior agreement or terms thereof. As our Supreme Court early stated:

"* * * [N]either of * * * [the parties] may show by parol testimony that the agreement, at the time of this execution or before, was otherwise than is therein expressed. But that does not prevent the parties from subsequently making another and different agreement, or from orally altering, changing, or modifying the written contract when they mutually agree thereon." Sitkin v. Smith, 35 Ariz. 226 at 230, 276 P. 521, 522, 66 A.L.R. 645 (1929).

This is in agreement with the statement made in Simpson on Contracts, § 63, pages 227–228:

"The parol evidence rule has never prevented proof of an oral or written agreement which varies or contradicts the terms of a prior written contract. If it did, it would be a wholly unwarranted interference with freedom of contract. Parties may change, add to, and totally control what they did in the past. They are wholly unable by any contractual action in the present, to limit or control what they may wish to do contractually in the future."

■■ In the instant case, parol evidence would not be admissible to vary or amend the unambiguous terms of the lease agreement entered into between the parties. Parol or oral testimony, however, may be admitted to show that the parties to the agreement subsequently changed, altered or modified their previous agreement.

There is also authority for the proposition that the parol evidence rule applies only to the parties to the contract itself, and not to litigation between a party who was a stranger to the contract. For example:

"The parol evidence rule, ORS 41–740, prevents the parties to an integrated written contract from varying or contradicting the terms of the contract when litigating between themselves concerning their rights thereunder. However, parol evidence can be used to vary or contradict a contract when the litigation is between a party to the contract and a stranger thereto. (citations omitted) This is true even when the evidence is offered by the party to the contract." Carolina Casualty Ins. Co. v. Oregon Auto Insurance Co., Or., 408 P.2d 198, 201 (1965).

■ We feel and therefore hold that the "parol evidence rule" did not bar the admission of testimony concerning the subsequent agreements between the parties altering, amending and modifying the prior lease agreement.

### "DEAD MAN" STATUTE

■ Appellant also contends that the so-called "dead man" statute, § 12–2251 A.R.S., prohibits the Bobos, who stand to benefit therefrom, from testifying as to the alleged oral modification of the lease agreement. The statute reads as follows:

"In an action by or against executors, administrators or guardians in which judgment may be given for or against

them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party, or required to testify thereto by the court. The provisions of this section shall extend to and include all actions by or against the heirs, devisees, legatees, or legal representatives of a decedent arising out of any transaction with the decedent." § 12–2251 A.R.S.

Our Supreme Court has recently stated: "As to the application of the Arizona 'Dead Man' statute, A.R.S. § 12–2251, we point out that its application is discretionary with the trial judge, and he can permit testimony regarding conversations and transactions with the deceased whenever he feels justice will be served. Goff v. Guyton, 86 Ariz. 349, 346 P.2d 286 (1959), Steinfield v. Marteny, 40 Ariz. 116, 10 P.2d 367 (1932). In this case we are directed to no evidence of abuse of this discretion. Furthermore, only parties to the action are affected by that statute. Corbett v. Kingan, 19 Ariz. 134, 166 P. 290 (1917). The testimony establishing Felder's case is not that of himself or other parties to the action but rather that of disinterested neighbors and friends." Condos v. Felder, 92 Ariz. 366 at 372, 377 P.2d 305, 308 (1962).

In the instant case, Bobo was not a party to the litigation and Bobo's interest in the case, however immediate and extensive, is not in itself the disqualifying factor. Corbett v. Kingan, 19 Ariz. 134, 166 P. 290 (1917). We feel and therefore hold that the so-called "dead man" statute did not prohibit admission of Bobo's testimony by the trial court.

## MUST THE OFFSET BE FILED AS A CLAIM TO BE ALLOWED BY THE EXECUTOR

Appellant next contends that the court erred in approving the executor's accounting because it represented the allowance of improper claims against the estate, in that the executor erroneously allowed Bobo to

offset sums advanced against the lease payments after the time for filing claims against the estate expired. Section 14–570, subsec. A A.R.S. states as follows:

"All claims arising upon contracts, whether due, not due or contingent, shall be presented to the executor or administrator within the time limited in the notice to creditors, and any claim not so presented is barred forever, but when it is made to appear by affidavit of claimant to the satisfaction of the court that claimant did not have notice by reason of being without the state, the claim may be presented at any time before the decree of distribution is entered."

Appellant contends that the executor may not consider or approve a claim that is not timely filed which claim arises out of a contract (due, not due or contingent) and this is clearly the law in Arizona. Fernandez v. Garza, 88 Ariz. 214, 354 P.2d 260 (1960), see also 1 Arizona Law Review 319 (1959). Appellant contends that the offset is a claim based upon contract and therefore barred by the statute. Appellant cites Lowry v. Crandall, 52 Ariz. 501, 83 P.2d 1003, 120 A.L.R. 271 (1938), for the proposition that anything furnished decedent in his lifetime would be upon contract within the meaning of § 14–570 A.R.S. Our Supreme Court stated in that case concerning services and merchandise furnished decedent during his last illness:

"Anything furnished decedent in his lifetime would be 'upon contract' and therefore claims for expenses of last sickness should, under this section, be presented to the personal representative and if not so presented no action may be maintained on them." 52 Ariz. 501 at 506, 83 P.2d 1003 at 1005.

We do not feel that this is applicable to the matter before this Court. In the instant case, the "claim" against the estate is not a claim against general estate funds, but an offset against an amount in the hands of the claimant (Bobo) which is payable to the estate as rent accruing after the death of decedent. The claimant herein does not

need to make a claim in order to receive these funds, but merely asserts an offset against funds which are due to the estate. Should the executor bring a suit for the rent due, claimant would be able to plead the offset as a partial defense. Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630 (1964), Ames v. Ames, 170 Kan. 227, 225 P.2d 85 (1950).

■ Such being the case, the lessee, Bobo, was not required to comply with the statutes governing presentation of claims against the estate, within the time specified by the statute. The action of the executor in allowing the offset was therefore within the scope of his authority, and not prohibited by the expiration of the four month period mentioned in § 14–570 A.R.S.

Also, the action of the executor in allowing the offset and petitioning the court for approval provided ample opportunity for persons with a proper standing before the court to object to said offset and to have the matter litigated as it was in fact litigated in the instant case.

## STATUTE OF FRAUDS

In further support of his second argument, the appellant contends that the section of the Statute of Frauds, § 44–101, Subsection 5 A.R.S., which requires that an agreement which "is not to be performed within one year from the making thereof" be evidenced by some writing, effectively bars a claim based upon the oral modification of the lease agreement.

■■ The law in Arizona seems to be well-settled, however, that an agreement is removed from the Statute of Frauds where there has been complete performance by one of the parties. Diamond v. Jacquith, 14 Ariz. 119, 125 P. 712, L.R.A.1916D, 880 (1912), Waugh v. Lennard, 69 Ariz. 214, 211 P.2d 806 (1949), Custis v. Valley National Bank of Phoenix, 92 Ariz. 202, 375 P.2d 558 (1962). Since Bobo made the expenditures for the benefit of the leased land pursuant to the contract, his part of the "contract" was fully performed and he was entitled to receive the offset against the rents for the lessor in spite of the fact that the agreement was not evidenced by writing.

## THE STATUTE OF LIMITATIONS

■ As another basis for his second argument, the appellant contends that the Bobo offset is barred by the Statute of Limitations, Section 12–543 A.R.S., which states:

"There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions: 1. For debt where the indebtedness is not evidenced by a contract in writing."

The appellant argues that when the time for payment is indefinite, the statute begins to run when the ability to pay arises. That since the decedent had the ability to pay her indebtedness to Bobo at any time before her death in October, 1961, and since the last expenditure by Bobo was in August, 1958, the Statute of Limitations was therefore running and had expired prior to the time Bobo offset his claim against the lease payments in 1962 and 1963. The testimony is ample from which the court could find that the funds advanced by Bobo were to be offset against the last rents due under the lease. The lease option to renew was exercised by Bobo and approved by the decedent and Bobo had the right to offset the amount against the lease payments due in 1965 and the last part of 1964. That the executor and Bobo decided to offset the amounts against earlier rental payments (1962 and 1963) does not make the agreement between Bobo and decedent any less indefinite, and absent a valid later agreement between the executor and Bobo, the Statute of Limitations had not begun to run in 1962 when the offset was allowed.

■ As the appellant points out, Arizona has no statute imposing liability on the landlord to reimburse the tenant for improvements to the property. However, where, as here, there exists a specific agreement between the parties, that agreement governs the rights of the parties. Grizzle v. Runbeck, 74 Ariz. 92, 244 P.2d 1160 (1952). The

agreement appears to clearly and definitely state the obligations of the parties, and as we have already held, it is sufficient to bind the parties to their obligations.

## QUESTION OF "PUMP RIGHTS"

The final proposition advanced by the appellant in support of his argument that the claim was improper is that the money expended for Pump Rights properly constituted payments for excess water which under the terms of the lease were chargeable to the lessee.

 . The testimony indicates that this expenditure, to acquire the right to pump two acre feet of water per acre, was not for the water itself, but for the right to use the water. There was ample evidence from which the court below could find that the Pump Rights once purchased remained as a permanent improvement to the land and that the purchase of these rights did not constitute payments for "excess water" under the terms of the lease.

The judgment below is affirmed.

· DONOFRIO, J., concurring.

DONALD DAUGHTON, Superior Court Judge (dissenting).

I dissent.

The evidence is uncontradicted that the oral modification of the lease in question, provided that Bobo was to receive credit on the rentals due *at the end of the lease term* for certain improvements and expenditures made by Bobo on behalf of the decedent. The term of the lease in question would have ended 1 July, 1965. The effect of the Lower Court's approval of the First Account and Report of the Executor is to authorize the executor to modify the lease between Bobo and Mrs. MacDonald to allow the credit to be taken by Bobo on the rent due the estate on 1 January and 1 July 1962, and 1 January 1963. This deprived the estate of the sum of $10,002.81, at a time when, under the evidence, the estate was in critical need of cash. No evidence was presented by or on behalf of the executor to justify such a modification of the lease in question. I do not believe that the executor had the right to so modify this asset of the estate nor that the Lower Court had the right to approve such a modification upon the evidence before it, and would, for these reasons, vote to reverse the judment of the Lower Court.

NOTE: Chief Judge HENRY S. STEVENS having requested that he be relieved from consideration of ·this matter, Judge DONALD DAUGHTON was called to sit in his stead and participate in the determination of this decision.