412 P.2d 697

**Anna M. SMITH, Appellant,**

**v.**

**Thomas TANG, Administrator with Will Annexed of the Estate of Roy G. Smith, Deceased, Appellee.**

**In the Matter of the ESTATE of Roy G. SMITH, Deceased.**

**No. 7630.**

Supreme Court of Arizona.

En Banc.

March 25, 1966.

Gorodezky, Mitchell & Stuart, by Sheldon Mitchell, Phoenix, for appellant.

James H. Green, Jr., Phoenix, for appellee.

UDALL, Justice.

This is an appeal by Anna M. Smith, plaintiff herein, who filed suit against the administrator with the will annexed of her late husband's estate, defendant herein, for money claimed owing therefrom to her. Plaintiff's claims against her late husband's estate were for monies spent by her for his funeral bills, for expenses of his last illness and for damages arising out of her husband's claimed breach of an ante-nuptial agreement. A trial was had and a verdict in favor of plaintiff was returned by the jury, and from the trial court's granting of defendant's motion for a new trial, plaintiff appeals.

Prior to the trial both parties herein moved for partial summary judgment as to proceeds from the sale of joint tenancy property owned by plaintiff and her late husband which the defendant by counterclaim sought to recover. The trial court granted partial summary judgment for defendant, thereby giving defendant one half of the net proceeds of the sale of the joint tenancy property.

After the trial plaintiff petitioned the probate court for a family allowance for herself and to set over to her a probate homestead consisting of the residence of herself and her late husband. From the denial of her petition, the plaintiff appeals.

We ordered consolidation of the appeals from the judgment and orders entered in the trial court and from the action taken by the probate court.

On February 26, 1945, in the state of Ohio, Roy G. Smith, deceased, executed his will which was admitted to probate in the Superior Court of Maricopa County. The will named Mr. Smith's children by a former marriage as beneficiaries. One of the witnesses to the will was plaintiff who was employed by Smith and subsequently was married to him. On May 18, 1949, Smith and plaintiff entered into an ante-nuptial agreement in Canton, Ohio. On June 4, 1949, the parties to the agreement were married in Ohio and subsequently moved to Arizona.

Prior to Roy G. Smith's death, he and plaintiff owned as joint tenants, with right of survivorship, residential property in Phoenix, Arizona. On January 7, 1959, Mr. Smith and plaintiff entered into an agreement to sell the house for the sum of $16,000. Both buyer and seller signed escrow instructions which were delivered to

an escrow agent and plaintiff and Mr. Smith delivered a warranty deed to the escrow agent in connection with the sale. The buyer made a down payment of $1750 to Mr. Smith who deposited the money in his separate bank account. On January 21, 1959, Mr. Smith died in Phoenix, and thereafter the title company, acting as escrow agent in the sale of the real property, obtained a deed from plaintiff and paid the balance of the purchase price, $13,-537.37, to her.

The questions presented for review by this appeal, stated in their most concise form are: (1) Did the trial court abuse its discretion in granting a new trial where the verdict returned by the jury exceeded the amount of damages sought by the complaint? (2) Whether the purchase price from a sale of real property held in joint tenancy goes to the survivor where one joint tenant dies after an agreement of sale of the property, but prior to payment of the full purchase price? (3) May a surviving spouse waive her claim to a family allowance or a probate homestead under A.R.S. § 14–514 by an ante-nuptial agreement?

Plaintiff's amended complaint sought to recover damages against the estate upon two causes of action. The first cause of action sought to recover damages of $6,078.86 which included expenses of last illness, funeral expenses, payments made to protect the estate, loans allegedly made by plaintiff to the deceased husband, and one-half of the amount received for the sale of the joint tenancy property. By her second cause of action plaintiff sought $14,-788.51 which included separate monies allegedly spent by plaintiff for her comfort and support for which she asks to be reimbursed and loans made by plaintiff to her late husband. In both causes of action plaintiff asked for a sum of $4,195.51 for loans which plaintiff claimed were made to Mr. Smith from 1957 to 1959. The jury's verdict for plaintiff on the first cause of action was for $16,000, which was $9,281.14 in excess of the damages alleged in the amended complaint. The jury returned a verdict on the second cause of action for plaintiff in the sum of $1,900. Thus, the total amount awarded plaintiff by the jury was $17,900 whereas the total amount prayed for by plaintiff was $16,-671.86 if the $4,195.51 is included only once.

Immediately after the verdict was returned by the jury, counsel moved to conform the verdict to the intent of the jury by reversing the causes of action, which motion was granted by the trial court pursuant to Rule 49(c), Rules of Civil Procedure, 16 A.R.S. Thereafter, defendant sought a new trial which was granted by the trial court although the court did not indicate upon which grounds the motion was granted. One of the reasons stated in the motion for a new trial was that the

verdict was for an excessive amount of damages.

■ The general law with respect to a verdict for more than the allegation of a complaint demand is that the verdict is erroneous. 89 C.J.S. Trial § 506. As stated in 65 A.L.R.2d 1331:

"In the majority of cases where a verdict or judgment entered upon such verdict was deemed erroneous because exceeding amount of damages claimed or demanded in the successful party's pleadings, it has been held that a new trial may be avoided by a remittitur of the amount of the excess."

There was no remittitur sought in the instant case and the trial court did not so order. Instead, the trial court granted defendant's motion for a new trial.

■ The order granting defendant's motion for new trial did not comply with Rule 59(m), Rules of Civil Procedure, 16 A.R.S., by specifying with particularity the ground or grounds upon which the new trial was granted. We recently commented on a general type of order in granting a new trial in Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809, 811 (March 3, 1966) stating that in this situation "we will presume that the verdict of the jury was correct, placing the burden upon the appellee to convince us that the trial court did not err in ordering a new trial." We are not convinced that the verdict of the jury was incorrect even though the amount awarded plaintiff was in excess of the amount sought in her complaint.

■ The defendant's motion for a new trial set out several reasons why a new trial should be granted.[1] The grounds, however, related primarily to an erroneous verdict by the jury in that it was not responsive by awarding more damages than were asked or proven and that the trial court erred in purporting to amend or modify the verdict pursuant to Rule 49(c), Rules of Civil Procedure, 16 A.R.S. Rule 49(c) states, in part: "If the verdict is informal or defective, the court may direct it to be reformed at the bar * * *."

1. The motion for new trial was as follows:
"1. The verdict of the jury, to wit: 'in favor of the plaintiff * * * on the first cause of action in the amount of $16,000.00 * * '* ' was erroneous, not justified by the evidence and contrary to law, in that the allegations of damage contained in plaintiff's first cause of action and the evidence in support thereof do not exceed the sum of $7,828.86.
"2. That as a result of the foregoing, the verdict on the first cause of action is for an excessive amount of damages.

"3. The judgment herein is contrary to law, not justified by the evidence, inconsistent with the verdict, and based upon a defective verdict as aforesaid, in that:
a. The judgment herein falsely and misleadingly states, on page 1 in paragraph 1, that the jury returned a verdict 'For the plaintiff on her first and second cause of action, the sum of Seventeen Thousand Nine Hundred Dollars ($17,900.00).' "

Where a verdict is manifestly irregular or defective the trial court may put the verdict in such form as to conform to the intention of the jury, when the intention can be ascertained with certainty. Southern Pacific Ry. Co. v. Mitchell, 80 Ariz. 50, 292 P.2d 827 (1956). There is little doubt that the jury reversed the causes of action in this case as shown by the above facts. The jury's intent was clearly demonstrated by their answer to a written interrogatory submitted by the court which stated in substance that the deceased husband failed to support and maintain plaintiff in accordance with the ante-nuptial agreement. The trial court had the power to grant plaintiff's motion to conform the verdict to the intention of the jury by reversing the causes of action.

■ We do not believe it is proper to permit a judgment on a verdict returned in excess of the amount of damages demanded by a party in his pleadings. The danger in permitting an excessive verdict is to allow verdicts that spring from passion or prejudice rather than sufficiency of proof. The claimant is in the best position to evaluate his demand and if the verdict surpasses his estimate he may amend his complaint, submit to a remittitur, or modification of the judgment by this Court.

■ This Court may modify a judgment and may render such judgment as the court below should have rendered. A.R.S. § 12–2103; cf. Kennedy v. Kennedy, 93 Ariz. 252, 379 P.2d 966; Roberts v. Malott, 80 Ariz. 66, 292 P.2d 838; Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459, 29 A.L.R.2d 518. The verdict of the jury is presumed correct and defendant has not convinced us a new trial should have been granted because the verdict was in excess of the demand.

The damages assessed by the jury were not excessive in a degree necessary to imply the influence of passion or prejudice. The verdict was $1,228.14 in excess of the amount sought by plaintiff and this does not indicate the verdict resulted from prejudice. The excess verdict was not a nullity as such, but did show the unequivocal intention of the jury to award the plaintiff the full amount she asked. The evidence of the case was sufficient to warrant a verdict for the amount claimed. There is no reason why the parties should be subjected to a new trial. We, therefore, order the judgment modified to reduce the award in the amount of $1,228.14.

The next question is whether a contract to convey the entire interest in real property by joint tenants acts as a severance of the joint tenancy. This particular question has never been decided by this Court, and there is a conflict of authority existing regarding the effect of a contract entered into by

all of the joint tenants for the sale of a joint tenancy premises.[2]

Defendant's contention here basically is that whenever joint tenancy property is sold, the joint tenancy ownership is terminated. Defendant urges, the contract of sale of joint tenancy property not specifying otherwise, a tenancy in common is created or that the proceeds come within the provisions of A.R.S. § 25–211, subsec. A which states, "[a]ll property acquired by either husband or wife during the marriage * * * is the community property of the husband and wife."

While the majority of cases that have dealt with this problem have held that the conveyance by all joint tenants does not sever the joint tenancy, this does not necessarily foreclose our consideration of the question in this state. Most of the jurisdictions that have ruled on this matter were not community property states, nor did they have similar statutes or case law in regard to joint tenancy as we have in Arizona. See Collier v. Collier, 73 Ariz. 405, 242 P.2d 537; Henderson v. Henderson, 58 Ariz. 514, 121 P.2d 437; In re Estate of Baldwin, 50 Ariz. 265, 71 P.2d 791. This Court has noted in the past that:

> "It should not be overlooked on the one hand that the doctrine of survivorship is not a favorite of the law, * * * and upon the other, that the community property principle is too deeply rooted in the policy of this state to permit it to be set aside except in those cases in which the law clearly permits it and the parties so intend." In re Estate of Baldwin, 50 Ariz. at 275, 71 P.2d at 795.

Under well established law, where an agreement contains unconditional promises to buy and sell real property the doctrine of equitable conversion applies. Lebrecht v. Beckett, 96 Ariz. 389, 396 P.2d 13. The result of equitable conversion is that the vendor holds the land in trust for the purchaser and the purchaser is deemed to hold the purchase price for the vendor. Shreeve v. Greer, 65 Ariz. 35, 173 P.2d 641; Strahan v. Haynes, 33 Ariz. 128, 262 P. 995.

2. Cases suggesting or holding that a change in the property does not affect the relation of joint tenancy unless intent to do so is manifested: Fish v. Security-First Nat. Bank, 31 Cal.2d 378, 189 P.2d 10; Watson v. Watson, 5 Ill.2d 526, 126 N.E. 2d 220; In re DeWitt's Will, 202 Misc. 167, 114 N.Y.S.2d 81; Simon v. Chartier, 250 Wis. 642, 27 N.W.2d 752; In re Hayes' Estate, 1 Ir.R. 103; Hewitt v. Biege, 183 Kan. 352, 327 P.2d 872; Leak v. M'Dowall, 32 Beav..28, 55 Eng.Reprint 11. See generally, 64 A.L.R.2d 918; 38 Minn.L.Rev. 466.

Some jurisdictions hold that where both tenants join in the contract to sell, the effect is to terminate the joint tenancy, in the absence of distinct indications of a contrary intent. See, In re Sprague's Estate, 244 Iowa 540, 57 N.W.2d 212 (semble); In re Baker's Estate, 247 Iowa 1380, 78 N.W.2d 863, 64 A.L.R.2d 902; Buford v. Dahlke, 158 Neb. 39, 62 N.W.2d 252; Panushka v. Panushka, 221 Or. 145, 349 P.2d 450.

"The doctrine is founded upon the principle that courts of equity regard the substance and not the mere form of the contract and 'consider things directed or agreed to be done, as having been actually performed.'" Lebrecht v. Beckett, supra. Thus, we are committed to the doctrine of equitable conversion in this jurisdiction.

For real property to be held as joint tenants by a husband and wife in Arizona the grantor must, by express words, vest the estate in the survivor upon the death of a grantee. A.R.S. § 33–431. We are not dealing with the creation of a joint tenancy in this case, but with the time of severance of a joint tenancy. There is no question that the conveyance of one joint tenant to a stranger severs the joint tenancy.

For parties to hold property in joint tenancy there must be present the unities of time, title, interest and possession. If the joint tenancy is severed by a conveyance by all joint tenants at least one of the unities must be affected by the conveyance. There is no question that the unity of time is unchanged inasmuch as the joint tenants acquired the property and executed the contract at the same time. The legal title is unchanged since the vendor retains legal title as security for payment of the purchase price. Likewise, the unity of possession is unchanged since there is no requirement of actual possession. If the joint tenancy is severed, it is because the joint tenants hold a different interest after executing the contract to sell. There is admittedly some interest remaining in the joint tenants as the security interest is the same after execution of the contract. The proportion of ownership is the same in the joint tenants after a contract to sell even though the interest in the real property is less after the agreement. Thus, there is not a complete severance of the joint tenancy where all joint tenants execute a contract to sell.

The mutual interest the joint tenants retain after a contract to sell is legal title as security for payment of the purchase price. This interest is different from the prior interest the joint tenants held in the land. Prior to entering the agreement to sell the real property, the joint tenants owned legal and equitable title to the land. After executing the contract to sell the joint tenancy property, the joint tenants have legal title as security for payment of a debt, and the purchaser of the property has beneficial title by equitable conversion.

The vendors-joint tenants have a beneficial interest in the right to receive payment for the real property. The problem resolves to an inquiry as to whether the right to receive the payment is subject to survivorship. We hold that the payment or proceeds from sale of real property held in joint tenancy are not subject to survivorship absent an intent indicated by the contract of sale to take the proceeds as joint

tenants. This solution maintains the integrity of A.R.S. § 33–431, A.R.S. § 25–211, subsec. A, and is consistent with this Court's decisions pertaining to joint tenancy. Accordingly, if the escrow fails the property reverts to the joint tenants in the same form of ownership as prior to the contract to sell.

 The determining factor in this problem as to whether there has been severance of a joint tenancy by conveyance of all joint tenants is the intent manifested by the parties. In this case, there was no indication by the parties of their intent to take the proceeds as joint tenants. Mr. Smith used separate money to buy the house, but elected to have the deed conveyed in joint tenancy. The down payment of $1750 was taken by the deceased and placed in his separate checking account. Neither of these acts would seem to demonstrate the necessary intent required to take the proceeds in joint tenancy.

 Plaintiff's final contention is that the right to a widow's allowance and probate homestead cannot be waived by an ante-nuptial agreement not clear and explicit as to what rights were being waived. We agree with this proposition of law since the underlying purposes of A.R.S. § 14–514 and A.R.S. § 14–513 are to insure a home for the surviving spouse and children and to provide support during the period of administration. But, we also recognize that by an ante-nuptial agreement which clearly and explicitly waives these rights, there may be an effective legal waiver. There is no dispute in this case as to the validity of the pre-nuptial agreement. The language of the ante-nuptial agreement which is applicable was:

"2. Each party is hereby barred from any and all rights, interests or claims by way of dower, inheritance, descent, distribution, *allowance for twelve (12) months' support, right to reside in the mansion house, more than ten (10) months after the death of the other,* and all rights or claims as widow, widower, heir, distributee, survivor, or next of kin, and all other rights or claims whatsoever, in or to the estate of the other, whether real or personal, and whether now owned or hereafter acquired, which may, in any manner, arise or accrue by virtue of said marriage." (Emphasis added]

Most courts require a clear showing of purpose to effectively cut off a widow's allowance since the right is given by statute and the state is vitally interested in this proceeding. In re McLaughlin's Estate, 117 Colo. 67, 184 P.2d 130; In re Place's Estate, 166 Kan. 528, 203 P.2d 132; In re Miller's Estate, 144 P.2d 91 (Cal.App.). But see, In re Wamack's Estate, 137 Cal.App.2d 112, 289 P.2d 871; In re Moore's Estate, 210 Or. 23, 307 P.2d 483, 308 P.2d 180, 65 A.L.R. 2d 715; Maher v. Knauss, 150 Colo. 108, 370 P.2d 1017. See generally, 65 A.L.R.2d 727 and cases cited therein. The question

thus becomes whether the parties to the ante-nuptial agreement clearly intended such a result. After carefully examining the agreement we believe the foregoing language clearly constitutes a waiver by plaintiff of any claim for what is designated a family allowance or probate homestead in Arizona.

The agreement specifically states that each party is barred from "allowance for twelve (12) months' support, [and] right to reside in the mansion house, more than ten (10) months after the death of the other * * *." This language would seem to indicate that there was a waiver to the family allowance and probate homestead. It is difficult to find any other meaning for the words used. The language is clear enough and admits of no other construction.

The lower court's order granting a new trial is reversed and the judgment is modified by reducing it in the amount of $1,228.14. The case is remanded to the trial court to enter judgment on the jury's verdict as modified. The partial summary judgment in favor of defendant as to the ownership of the proceeds from the sale of the jointly held property is affirmed. The order of the probate court in favor of defendant relating to waiver of widow's allowance and probate homestead is affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and LOCKWOOD and McFARLAND, JJ., concur.