768 P.2d 660

**In re the ESTATE OF Joseph J. CALLIGARO, deceased, Defendant–Appellee,**

**v.**

**Jean OWEN, Plaintiff–Appellant.**

**No. 1 CA–CIV 9752.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 1, 1988.

As Corrected on Denial of Reconsideration Nov. 10, 1988.

Review Denied Feb. 22, 1989.

Simonson & Arbetman by Michael Simonson, Phoenix, for defendant-appellee.

Paul G. Ulrich, P.C. by Paul G. Ulrich, and Law Offices of William D. Black by William D. Black, Phoenix, for plaintiff-appellant.

## OPINION

BROOKS, Judge.

Appellant Jean Owen petitioned the superior court to have certain property included as an asset in the estate of her father, Joseph J. Calligaro. She sought to establish that the proceeds from the sale of a parcel of real property, which had been owned by the decedent and his wife, constituted community property to be included in his estate rather than joint tenancy property which passed outside of the estate to the survivor. From the trial court's adverse ruling, upon cross-motions for summary judgment, appellant appeals to this court.

## FACTS AND PROCEDURAL HISTORY

Joseph J. Calligaro died intestate on January 26, 1986, survived by his wife, Mavis Calligaro, and by appellant, his daughter from a prior marriage. Mavis was appointed personal representative of the estate. After Mavis filed an inventory and appraisement of the estate, which omitted the proceeds of sale involved in this appeal, appellant filed a petition to supplement the inventory with the sale proceeds. Mavis contested the petition and the matter was set for hearing. Prior to the hearing, both parties moved for summary judgment alleging that there were no material issues of fact and each argued, respectively, that she was entitled to judgment as a matter of law.

The following facts were presented to the trial court concerning the real property and the proceeds arising from the sale. In 1967, Joseph and Mavis Calligaro purchased a 20–acre parcel of real property in Cave Creek, Arizona. The property was purchased with funds common to the marriage rather than with the separate funds of either spouse. The Calligaros took title to the property through a deed in which they each acknowledged that they were acquiring the property as "joint tenants with the right of survivorship, and not as community property nor as tenants in common." Title to the property remained in joint tenancy throughout the ensuing years.

In January of 1985, the Calligaros entered into a contract to sell the property. The contract provided for a down payment with the remainder of the purchase price to be evidenced by a note payable in semi-annual installments and secured by a deed of trust. However, the contract gave no indication of how the proceeds of sale were to be owned by the Calligaros; nor did it reflect how they had previously held title to the property.

Stewart Title & Trust of Phoenix, Inc. served as escrow agent and title insurer for the transaction. The escrow file contained no information relating to the Calligaros' intention as to how they wanted to hold the sale proceeds. A preliminary title report prepared by Stewart Title had listed the owners of the property as "JOSEPH J. CALLIGARO AND MAVIS CALLIGARO, husband and wife," rather than showing them as joint tenants. Other documents prepared by Stewart Title for the escrow listed the sellers as "Joseph and Mavis Calligaro, his wife." The promissory note and the deed of trust also contained this designation. Although the form on which the escrow instructions had been prepared contained boxes to be checked to indicate whether the proceeds from the sale were payable to the seller "as joint tenants" or "as community property," neither box had been marked by the escrow officer. The Calligaros had signed and returned the escrow instructions.

In a deposition, Terry Schumacher, the Calligaros' real estate agent, testified that he never discussed with the Calligaros how the proceeds from sale were to be received and knew of no instructions given to the title company in that regard. He had been unaware of how the Calligaros held title to the property, since he had not seen their deed nor questioned them on the subject.

He eventually became aware of the preliminary title report, which made no reference to joint tenancy. He testified, though, that he had not concerned himself with how the Calligaros would choose to receive the sale proceeds, believing that to be a matter they would take up with an attorney or the escrow company if they so desired.

Depositions were also taken of key personnel at Stewart Title, including Jaki Manering, the escrow officer who had handled the transaction. Ms. Manering testified that she prepared the escrow instructions and that she derived the information from the purchase contract. She stated that she did not believe she had ever met or dealt with the Calligaros, that nothing in the file indicated how they wanted to take the sale proceeds, and that she had no recollection that any inquiry was ever made from her or to her about how the proceeds would be held. She testified that if the proceeds were to be taken in joint tenancy, a special form providing for joint tenancy would have been used but that no such form was used in this case. She explained that she would not create a joint tenancy unless instructed to do so. In her view, it was the responsibility of the sellers to advise the title company as to how they wanted to receive the proceeds. She added that if the escrow company had happened to ask sellers how they wanted to receive the proceeds, it would have been done merely as a courtesy. She testified that even if the preliminary title report had shown that the sellers had held the property in joint tenancy, she would not have made the proceeds payable that way without explicit instructions from the sellers. With regard to the boxes on the escrow form indicating how proceeds were to be paid, she stated that if the information was not available, the boxes would normally be left blank.

Mavis Calligaro provided the trial court with additional evidence regarding intent through an affidavit in which she stated in relevant part:

4. That it was her understanding and intention that all proceeds of the sale of said property were to be paid to her and to her husband as joint tenants with right of survivorship.

5. That she believes it was her husband's intention and understanding that all proceeds of the sale of said property were to be paid to him and herself as joint tenants with right of survivorship.

6. That the down payment and first installment payment from the sale of said property were each deposited into a checking account at Valley National Bank, which was opened for the purpose, and that all proceeds of the account were to be paid to Joseph J. Calligaro or Mavis Calligaro as joint tenants with right of survivorship.

7. That she did not know of, understand or consent to, nor did she direct or know of any direction by her husband to any change in the form of ownership between she and her husband as it existed in the land, which was joint tenants with right of survivorship, to a different form of ownership between them with respect to the proceeds from the sale of that land.

Bank records verified that the Calligaros did, in fact, open the joint tenancy account into which the down payment and first installment were deposited within a few days after the closing of the transaction.

While appellant did not specifically refute any of Mavis Calligaro's factual allegations, she nevertheless argued that there were legal reasons that prevented most of these alleged facts from being considered by the trial court on the issue of intent. She argued that in *Smith v. Tang*, 100 Ariz. 196, 412 P.2d 697 (1966), our supreme court held that proceeds from the sale of real property held in joint tenancy are subject to survivorship only if the contract of sale manifests an intent by the sellers to take the proceeds as joint tenants. Since the purchase contract in this case did not specifically manifest such an intent, appellant contended that it would be improper for the court to consider any parol evidence on that issue. She argued that the trial court could not consider Mavis Calligaro's affidavit as presenting competent evidence of Mr. Calligaro's intent, not only because the affidavit violated the parol evidence rule, but also because it contained wholly

subjective conclusions and opinions without any proper foundation and because it violated the Arizona "Dead Man's" statute.[1] She conceded that the Calligaros had converted the down payment and first installment into joint tenancy property by placing these funds in a joint tenancy account, but argued that their decision to do so was irrelevant and immaterial to the issue of how they chose to receive payment of the entire sale proceeds at the time they entered into the sale transaction. She concluded that the record contained no competent evidence to prove that Mr. Calligaro had ever intended the proceeds to be taken in joint tenancy and that she was therefore entitled to summary judgment as a matter of law.

Mavis Calligaro contended that *Smith v. Tang* did not limit the court to the contract of sale in determining whether the sellers intended to take the proceeds as joint tenants and that it was proper for the court to consider extrinsic evidence in making that determination. She argued that the evidence presented by her affidavit was admissible and, when taken with the total circumstances presented in the case, established as a matter of law that the Calligaros had intended the proceeds to be held in joint tenancy.

Without stating its reasons, the trial court denied appellant's motion for summary judgment and granted the motion for summary judgment filed by Mavis Calligaro, as personal representative of the estate. This appeal followed.

## LEGAL ANALYSIS

In deciding whether the trial court erred in its ruling, we first turn to *Smith v. Tang*, which addresses the circumstances under which proceeds from the sale of real property held in joint tenancy are also subject to joint tenancy. Both parties recognize it to be the leading Arizona decision on this particular issue, but they reach different conclusions regarding its holding.

In *Smith v. Tang*, the administrator of Roy G. Smith's estate filed a claim against his widow to recover the proceeds from the sale of a parcel of real property to which Mrs. Smith claimed right and title to as the survivor in joint tenancy. Mr. Smith's will left his estate to his children by a former marriage. However, the Smiths held title to a particular parcel of property, which had been acquired with Mr. Smith's separate funds, in joint tenancy with right of survivorship.

The Smiths subsequently entered into an agreement to sell the real property. A warranty deed was delivered to the escrow agent and the buyer made a down payment of $1750 to Mr. Smith. He deposited those funds in his separate bank account prior to his death. The escrow agent then obtained a deed from Mrs. Smith and paid her the balance of the purchase price. The trial court concluded that the proceeds were not held in joint tenancy and awarded half of them to the estate.

In determining whether the trial court had ruled correctly, the supreme court phrased the issue as being whether a contract to convey the entire interest in real property by joint tenants acts as a severance of the joint tenancy. The court noted that the question was one of first impression in this state and that there was a conflict of authority existing in other jurisdictions on the issue. The court acknowledged that the majority of cases dealing with this problem had held that the conveyance by all joint tenants does not sever the joint tenancy, but stated that this would not foreclose consideration of the question because most of the jurisdictions which had so held had not been community property states, nor did they have statutes or case

1. Arizona's "Dead Man's" statute is codified at A.R.S. § 12-2251 and provides:

In an action by or against personal representatives, administrators, guardians or conservators in which judgment may be given for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party, or required to testify thereto by the court. The provisions of this section shall extend to and include all actions by or against the heirs, devisees, legatees or legal representatives of a decedent arising out of any transaction with the decedent.

law similar to that of Arizona regarding joint tenancy. The court then cited from *In re Estate of Baldwin*, 50 Ariz. 265, 71 P.2d 791 (1937):

'It should not be overlooked on the one hand that the doctrine of survivorship is not a favorite of the law, ... and upon the other, that the community property principle is too deeply rooted in the policy of this state to permit it to be set aside except in those cases in which the law clearly permits it and the parties so intend.' *In re Estate of Baldwin*, 50 Ariz. at 275, 71 P.2d at 795.

*Smith v. Tang*, 100 Ariz. at 203, 412 P.2d at 704.

In deciding the question of whether the sales contract severed the joint tenancy, our supreme court said that "[t]he problem resolves to an inquiry as to whether the right to receive the payment is subject to survivorship." *Id.* at 204, 412 P.2d at 705. The court then stated what purported to be its holding:

We hold that the payment or proceeds from sale of real property held in joint tenancy are not subject to survivorship absent an intent indicated by the contract of sale to take the proceeds as joint tenants. This solution maintains the integrity of A.R.S. § 33–431, A.R.S. § 25–211, subsec. A, and is consistent with this Court's decisions pertaining to joint tenancy.

*Id.* at 204–205, 412 P.2d at 705–706. After so holding, however, the court stated that "[t]he determining factor in this problem as to whether there has been severance of a joint tenancy by conveyance of all joint tenants is the intent manifested by the parties." *Id.* at 205, 412 P.2d at 706. The court then proceeded to examine extrinsic evidence showing that the property had been acquired with Mr. Smith's separate funds (even though title had been placed in joint tenancy) and that the down payment from the sale had been placed in his separate checking account. The court concluded that none of the evidence presented in that case indicated an intent by the parties to take the proceeds as joint tenants.

Appellant asks us to interpret literally the supreme court's language where it indicated it was holding that there must be an "intent indicated by the contract of sale to take the proceeds as joint tenants." She wants us to conclude from this language that extrinsic evidence of intent can never be considered and that joint tenancy cannot be found unless the contract of sale expressly states that the proceeds are to be taken in that manner. We find this to be an unreasonable interpretation of the law.

■ We first note that after stating that the intent to take proceeds in joint tenancy must be indicated in the contract of sale, the court went on to consider extrinsic evidence on the issue of intent. In our opinion, the court would not have gone through the process of reviewing extrinsic evidence if it had intended, by its holding, to exclude consideration of such evidence. A more reasonable interpretation of the court's holding, consistent with the analysis it conducted in the case, is that proceeds from the sale of real property held in joint tenancy will not be subject to survivorship absent proof of such intent by the sellers. That intent may be established from language in the contract of sale or from extrinsic evidence.

This interpretation is also consistent with our supreme court's holding in *Baldwin*, the case relied upon by the court in *Smith v. Tang*. The *Baldwin* court had concluded that if spouses are to hold property in joint tenancy, rather than as community property, their intent to do so must be clear. The court further stated that since a deed is generally signed by the grantors only, and not by the grantees, a joint tenancy clause may not be held binding on the grantees, and community property law thereby defeated, absent some evidence that the grantees intended to receive the property in that form. *Id.*, 50 Ariz. at 274, 71 P.2d at 800. Not only must the deed "contain language creating such an estate but ... it [must] further appear that the deed was accepted by the spouse whose property it is sought to bring within its terms, knowing that it contained that provision." *Id.* To that end, the court suggest-

ed that the deed might contain an acceptance of the terms thereof in the handwriting of the grantees, or an endorsement by the recorder that it was placed of record at the request of the deceased spouse; significantly, however, the court stated that if the deed disclosed no such acceptance, that fact might be established by any proper extrinsic evidence. *Id.*

Finally, we note that an interpretation of *Smith v. Tang* allowing the use of extrinsic evidence to prove intent is consistent with Arizona decisions which have repeatedly held that recitals in documents regarding title are merely *prima facie* evidence of ownership and do not preclude the court from determining the true status of property. *See e.g., Nationwide Resources Corp. v. Massabni,* 143 Ariz. 460, 694 P.2d 290 (App.1985); *Bourne v. Lord,* 19 Ariz.App. 228, 506 P.2d 268 (1973).

Appellant next contends that the personal representative failed to produce competent evidence that Mr. Calligaro intended the real property proceeds be received in joint tenancy. Although we have disagreed with appellant's contention that such an intention had to be shown in the contract of sale itself, we do agree that *Smith v. Tang* places the burden of proving intent upon the one seeking to establish joint tenancy in derogation of community property principles. If the personal representative failed to produce competent and material evidence from which it could be found that Mr. Calligaro had such an intent, summary judgment should have been granted in favor of appellant.

Most of appellant's argument centers upon the affidavit of Mavis Calligaro. She argues that the affidavit contained no competent evidence indicating Mr. Calligaro's intention that he and his wife take the proceeds as joint tenants rather than as community property. She argues that much of the evidence was inadmissible because it violated the parol evidence rule and because it consisted of subjective conclusions without proper foundation. She also contends that consideration of the affidavit would violate the Arizona "Dead Man's" statute.

We first reject appellant's contention that the affidavit testimony was inadmissible as parol evidence improperly offered to vary the terms of a written agreement.

■ The parol evidence rule is designed to prevent parties to an integrated written contract from varying or contradicting the terms of their bargained-for agreement. *See e.g., In re Estate of MacDonald,* 4 Ariz.App. 94, 417 P.2d 728 (1966).

■ We initially note that appellant has failed to identify the "contract," or specific term thereof, that the affidavit testimony supposedly varies or contradicts. She merely contends that the "sales documents here involved are clear and unambiguous." In order for the parol evidence rule to even arguably apply, appellant would have to point to some agreement, contract, or document which evidences an intent on the part of the Calligaros to receive the proceeds in a form of ownership other than joint tenancy with the right of survivorship. However, there is no indication in any of the documents before us that there was a written bargained-for agreement between the Calligaros as to how they would hold the proceeds. Absent such an agreement, there can be no term which the parol evidence rule would prohibit from being varied or contradicted. Any reference in the documents as to how the Calligaros had previously held title to the property, whether properly designated or not, is not necessarily evidence as to how they intended to take the proceeds. The parol evidence rule simply has no application to this case.

■ Similarly, we do not find that the affidavit testimony is barred by our "Dead Man's" statute. This statute prohibits testimony from the parties in a probate matter as to any transaction with, or statement by, the intestate. Such testimony is admissible only in the trial court's discretion to prevent an injustice or where there is independent evidence to corroborate the statement or transaction. *See In re Estate of Mustonen,* 130 Ariz. 283, 635 P.2d 876 (App. 1981); *Mahan v. First Nat'l Bank of Arizona,* 139 Ariz. 138, 677 P.2d 301 (App. 1984). Here, Mrs. Calligaro's affidavit

504

does not include any statements by the intestate, and we conclude that there is no need to consider the statute.

■ With regard to appellant's remaining concerns with the Calligaro affidavit, we agree that Mrs. Calligaro's "beliefs" do not establish her husband's actual intent. However, in examining the evidence in this case, we are satisfied that sufficient circumstantial evidence was presented from which an inference could be drawn that Mr. Calligaro intended to take the proceeds in joint tenancy. The Calligaros not only owned the subject property as joint tenants for eighteen years, but also placed what proceeds they did receive into a joint tenancy bank account.

At the same time, though, we are unable to sustain the trial court's grant of summary judgment in favor of the personal representative, Mavis Calligaro. Even where there is no factual dispute, a summary disposition is unwarranted if possible inferences to be drawn from the circumstances are conflicting. *Northern Contracting Co. v. Allis–Chalmers Corp.*, 117 Ariz. 374, 573 P.2d 65 (1977). While both parties in this case apparently felt that this case could be resolved on summary judgment as a matter of law, we find no indication in the record that they meant to bestow upon the trial court the right to make factual determinations prior to trial.

Since we conclude that neither party was entitled to judgment as a matter of law, we reverse the trial court's summary judgment and remand the matter for proceedings consistent with this decision. The parties respective requests for an award of attorney's fees are denied.

REVERSED AND REMANDED.

SHELLEY, P.J., and GRANT, V.C.J., concur.