826 P.2d 810

**John TROUTMAN and Kathy Troutman, his wife, Plaintiffs–Appellees,**

v.

**VALLEY NATIONAL BANK OF ARIZONA, as Personal Representative of Mabel E. Feick and Jesse Feick, Defendant–Appellant.**

**No. 1 CA–CV 90–018.**

Court of Appeals of Arizona, Division 1, Department D.

Feb. 27, 1992.

---

Andrews, Marenda & Moseley, P.A. by Dale E. Marenda and David Anderson, Phoenix, for plaintiffs-appellees.

Jennings, Strouss & Salmon by Katherine M. Cooper, Berry E. Lewin and James M. Ackerman, Phoenix, for defendant-appellant.

## OPINION

CLABORNE, Judge.

This appeal is from a jury verdict in a personal injury action brought against the estate of a driver involved in an automobile accident. The central issue concerns that relic called the Dead Man's Statute.

## BACKGROUND

The plaintiffs obtained judgment in a personal injury action against the estate of the driver of a vehicle involved in an auto accident in which the plaintiff Kathy Troutman was injured. Mabel Feick made a left hand turn at an intersection and collided with a vehicle driven by Kathy Troutman. Kathy Troutman and her husband sued Mabel Feick and her husband for damages arising out of that accident. Both Mr. and Mrs. Feick died of unrelated causes before trial and their personal representative, Valley National Bank, was substituted as the defendant.

The defendant wished to exclude a statement which Mabel Feick allegedly made to Kathy Troutman when the two were being taken in the same ambulance to a hospital. The trial court denied the defendant's request and permitted Kathy Troutman to testify that Mabel Feick had said:

> I didn't see her coming ... I went to the beauty shop. I didn't have my glasses on. I was reaching on the floor to get my purse.

The jury returned a verdict in favor of the Troutmans and found that Mabel Feick was 90% at fault. Valley National Bank appealed the judgment. Because we hold that the trial court did not abuse its discretion by allowing the statement in evidence, we affirm.

## DISCUSSION

The trial court admitted the alleged statement based upon Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–2251. That statute provides:

> In an action by or against personal representatives, administrators, guardians or conservators in which judgment may be given for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party, or required to testify thereto by the court. The provisions of this section shall extend to and include all actions by or against the heirs, devisees, legatees or legal representatives of a decedent arising out of any transaction with the decedent.

Put simply, when a lawsuit is by or against a personal representative of any estate (or a guardian of an incompetent), neither party can testify to statements made by the decedent or the incompetent. However, the statute's literal wording has been softened by case law in Arizona. First, the application of the statute is discretionary with the trial court. *E.g., Condos v. Felder,* 92 Ariz. 366, 371–72, 377 P.2d 305, 308 (1962); *Mahan v. First Nat'l Bank,* 139 Ariz. 138, 140, 677 P.2d 301, 303 (App.1984). Second, the trial court's exercise of its discretion to admit the statement will be upheld if there is independent corroborating evidence or injustice would re-

sult by the rejection of the testimony.[1] *Estate of Calligaro v. Owen*, 159 Ariz. 498, 503, 768 P.2d 660, 665 (App.1988); *Cachenos v. Baumann*, 25 Ariz.App. 502, 505, 544 P.2d 1103, 1106 (1976). Corroboration is an indicator of whether justice has been accomplished by the admission or rejection of statements covered by the statute. *In re Estate of Mustonen*, 130 Ariz. 283, 285, 635 P.2d 876, 878 (App.1981).

Here, the primary focus of the trial court was on whether the deceased's statements were corroborated by other evidence. The facts show that Alan Hutchings, a witness to the accident, could testify that when Mabel Feick approached the intersection, she turned left into the path of the plaintiff's vehicle. He could not say anything about what Mrs. Feick was doing or whether she was wearing glasses. The court also learned during the argument on the motion *in limine* that the ambulance attendant had not been contacted and interviewed by either party. After hearing argument, the court made the following ruling on the motion *in limine:*

> THE COURT: ... You [defendant] could have called the attendant and deposed the attendant and the attendant could have said, "I never heard anything like that."

> Ms. Cooper: That's true, but it is not our burden to present the evidence.

> THE COURT: But it is your burden on this motion, right? I think you have the burden on the motion.

> The more—Now that I think about it, I am going to change my mind for yet a third time and say that you could have called the attendant or at least you could have made a showing you couldn't locate the attendant. Given the fact you could have called him and you could have deposed him or her or it may have been more than one person involved, my ruling is that the evidence is admissible and I am also ruling that way because the word transaction is somewhat strange. It does seem to apply to some sort of business transaction as opposed to a tort happening. But my primary reason is not that. It is that there is corroboration for how the accident occurred. There was an easy way for the defendant to come in and show that the statement was not made or, at least, allegedly was not made. In which case, I probably would have excluded it. But that was not done, so the statement is admissible. ....

The appellant contends that the trial judge placed the burden of proof concerning an exception to the statute (corroboration) on the wrong party, and that there was no corroboration for the statements and they were, therefore, inadmissible.

### 1. *Burden of Proof*

Arizona decisions which discuss corroboration for alleged statements by the decedent do not expressly address which party has the burden of proof. However, one case implies that the burden is on the party seeking to avoid the application of the statute. In *In re Estate of Mustonen*, the court upheld the trial court's determination

---

1. Treatise writers and courts have long criticized the statute as a foolish rule. *See Corbett v. Kingan*, 19 Ariz. 134, 166 P. 290 (1917); *McCormick on Evidence* § 65 (3rd ed.1984); M. Ladd, *Admission of Evidence Against Estates of Deceased Persons*, 19 Iowa L.Rev. 521 (1934). The reasoning is that the issue is merely credibility of the witness rather than incompetence of the witness because of interest in the outcome of the litigation. It is credibility which is important concerning a question of perjury, not a rule excluding as incompetent the testimony of the witness who may commit perjury because of interest in the outcome of the litigation. As the *Corbett* court said:

 > We cannot say that it was the purpose of the legislature to exclude all evidence merely because the witness from whose lips it might fall

would enjoy the advantage of testifying to a transaction with a deceased person, who on that account could not confront and contradict him. Statutes which exclude testimony on this ground are of doubtful expediency. There are more honest claims defeated by them by destroying the evidence to prove such claim than there would be fictitious claims established if all such enactments were swept away, and all persons rendered competent witnesses. To assume that in that event many false claims would be established by perjury is to place an extremely low estimate on human nature, and a very high estimate on human ingenuity and adroitness.

 19 Ariz. at 142–43, 166 P. at 293 (*quoting St. John v. Lofland*, 5 N.D. 140, 64 N.W. 930 (1895)).

that there had been insufficient corroboration of a decedent's statements. 130 Ariz. at 285, 635 P.2d at 878. The trial court concluded that "no substantial or convincing corroborative evidence" was presented to support the claim of the party [appellant] who sought to avoid application of the deadman statute. *Id.* at 284, 635 P.2d at 877. On appeal, the court disagreed with appellant's argument that the standard imposed "places too onerous a burden on the party seeking to avoid the dead man statute." *Id.*

■ The result in *In re Estate of Mustonen* is consistent with the general laws of evidence with respect to burden of proof. The burden of proof never shifts, although the burden of going forward with evidence may shift. *See Palicka v. Ruth Fisher School Dist. No. 90*, 13 Ariz.App. 5, 9, 473 P.2d 807, 811 (1970). The party who asserts a fact has the burden to establish that fact. *Yeazell v. Copins*, 98 Ariz. 109, 116, 402 P.2d 541, 546 (1965); *Black, Robertshaw, Frederick, Copple, & Wright, P.C. v. United States*, 130 Ariz. 110, 114, 634 P.2d 398, 402 (App.1981).

■ Initially, the estate had the burden on the motion *in limine* to prove that A.R.S. section 12–2251 (1991) was applicable. The statute itself does not require proof of the absence of exceptions. As stated in *McCormick on Evidence* § 337,

In allocating the burdens, courts consistently attempted to distinguish between the constituent elements of a ... statutory command, which must be proved by the party who relies on the ... statute, and matters of exception, which must be proved by his adversary.

Edward W. Cleary et al., *McCormick on Evidence* § 337 at 951 (3rd ed.1984).

■ Arizona decisions place the burden of showing exceptions to an otherwise inapplicable statute on the party asserting that exception. For example, when a defendant asserts the statute of limitations as a defense, the defendant has the burden of proving that the complaint falls within the statute. However, the burden of proving that the statute was tolled or that the defendant is estopped from relying on the statute falls on the plaintiff. *See Engle Bros., Inc. v. Superior Court*, 23 Ariz.App. 406, 408, 533 P.2d 714, 716 (1975); *Anson v. American Motors Corp.*, 155 Ariz. 420, 421, 747 P.2d 581, 582 (App.1987).

■ The Troutmans faced a similar situation when the estate produced evidence demonstrating the applicability of the statute. Although the estate had the burden of proof on the motion *in limine* to show that the testimony in question was excluded by the statute, if it established a *prima facie* case that the statute was applicable, the burden of going forward shifted to the Troutmans to show that they fell within a recognized exception to the statute.

Although the burden of proof may have been misplaced by the trial court, the central issue is the exception: Was there "corroboration" of the statement sufficient to allow the statements of the deceased to go to the jury?

### 2. *Corroboration*

The trial court ruled that there was corroboration for the statements made by the deceased Mrs. Feick. The trial judge said, "What I am saying what I think corroboration is, not that somebody else heard the dead man make the statement, but there is independent evidence *sufficient to suggest* the way in which one party said the other party says it happened is actually true." (Emphasis added.) The argument is also made that corroborative evidence was also in the form of a telephone conversation between Hutchings and Mrs. Feick. That testimony is as follows:

She made a statement in the form of an inquiry at the time. She said, to the effect, that the other vehicle must have been going pretty fast, "I didn't see it at all," or words to that effect.

■ We agree that corroboration is not limited to evidence that the statement was made by the deceased. To be corroborative the evidence must, at a minimum, be the kind that *strengthens* or *confirms* that either the statement was made or that the statement was true. *Cf. State v. Turner*, 92 Ariz. 214, 220, 375 P.2d 567, 571 (1962);

*State v. Kennedy*, 122 Ariz. 22, 26, 592 P.2d 1288, 1292 (App.1979) (concluding that corroborative evidence *tends* to corroborate or confirm).

 The testimony by Hutchings concerning what he saw and what the decedent told him strengthens the statement by Mrs. Feick. Here, defendant's act of turning into the path of plaintiff's car without any apparent perception of its presence, together with her statements to Hutchings that she did not see the other vehicle, support the contested statement that "I didn't see her coming ... I went to the beauty shop. I didn't have my glasses on. I was reaching on the floor to get my purse." Although there may be other explanations for not seeing the other vehicle, the testimony does tend to corroborate the statement. Whether this evidence is sufficient corroboration is left to the discretion of the trial court. We should not intervene unless there is a clear abuse of that discretion, which means no substantial evidence on which to base the conclusion. "Substantial evidence" is defined as any "relevant evidence from which a reasonable mind might draw a conclusion." *Matter of Estate of Mustonen*, 130 Ariz. 283, 285, 635 P.2d 876, 878 (App.1981).

We feel that the evidence presented by Hutchings was substantial enough for the trial judge to be within his discretion in admitting it. The admission of the evidence did not produce an unjust result.

### THE THERMOGRAM TEST

 During the course of the trial, a neurologist called by the plaintiff testified concerning his care and treatment of the plaintiff Kathy Troutman. The doctor testified that in order to properly treat her, she should have some diagnostic tests, one of which was a thermogram. The record reflects that a *voir dire* examination of the doctor was done to determine the general medical acceptance in Arizona of such a test. The pretrial statement pursuant to Rule VI, Uniform Rules of Practice, stipulated into evidence the thermogram test results. Even so, the appellant felt that on the basis of the *voir dire* and the statement made by counsel, the thermogram test results should not have been admitted into evidence based on *Frye v. United States*, 293 F. 1013 (1923).[2] We said in *State v. Harris*, 152 Ariz. 150, 152, 730 P.2d 859 (App.1986):

> There is a second reason why no *Frye* inquiry was necessary in this case. No authorities were cited by the defense indicating that there was a lack of scientific acceptance of the technique as it was to be utilized in this case. While courts must guard against the use of unreliable evidence, inquiry need not be made simply because defense counsel announces, in conclusory terms, that evidence is unreliable....

In this case, there was nothing other than assertions by counsel concerning the general medical acceptance of a thermogram test. Furthermore, the doctor clearly stated during his testimony that the thermogram was only one of the diagnostic tools which he used to come to his conclusions concerning the medical condition of his patient. Speaking of the thermogram, the doctor said:

> Q. So it is a diagnostic aid for you, correct?
>
> A. It is a diagnostic aid.
>
> Q. And do you consider this as accurate as an MRI?
>
> A. To compare them is to compare apples and oranges. It is better to say that a thermogram is very sensitive. It is not accurate in terms of saying for sure that a person has pain or not. It is not accurate in the sense of saying they have a disc problem or not. It is just suggesting that there is some evidence that the nerve is irritated. That's all

**2.** Because of the difficulty in applying a *"Frye"* test, a number of courts have modified the rule. We deal with admissibility of the scientific evidence, not its credibility. Although *Frye* is not explicitly rejected in Arizona, we feel the focus should be a balancing between probativeness, materiality and reliability against the evidence's tendency to unfairly prejudice the other party. *See United States v. Williams*, 583 F.2d 1194 (2nd Cir.1978); *United States v. Jakobetz*, 955 F.2d 786 (2nd Cir.1992).

that is sensitive for. It doesn't tell you which nerve or exactly where it is or what is doing it. It just suggests that nerve tissue is irritated.

Q. All right. And, then, you did order or had conducted an MRI; is that correct?

A. Yes. The MRI scan was also done.

 If there is individualized foundation for the use of testimony and there is no proof of a lack of general acceptance, a trial court, after determining that no undue prejudice will result, has the discretion to admit the evidence if relevant. *See, State v. Roscoe*, 145 Ariz. 212, 700 P.2d 1312 (1984). There is nothing in this record to suggest that the diagnosis of the condition of the doctor's patient was solely based on the results of the thermogram. The trial judge was well within his discretion in admitting the evidence, and we find no error. The judgment of the trial court is affirmed.

TAYLOR and VOSS, JJ., concur.